In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2955

CARLOS COYOMANI-CIELO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent*.

Petition for Review of a Final Order of
the Board of Immigration Appeals

ARGUED MAY 22, 2014 — DECIDED JULY 14, 2014

Before POSNER, FLAUM, and MANION, *Circuit Judges*.

FLAUM, *Circuit Judge*. Carlos Coyomani entered the United States without inspection in 1997 and concedes that he is removable.[1] The question here is whether he is eligible for cancellation of removal. The Board of Immigration Appeals

---

[1] In his brief, the petitioner refers to himself as Carlos Coyomani, not Carlos Coyomani-Cielo. We follow his practice in our opinion.

(BIA or Board) found him ineligible for that relief. Coyomani now petitions for review, arguing that the Board misinterpreted the relevant provision of the Immigration and Nationality Act (INA), § 240A(b)(1)(C). We find that statutory provision ambiguous but conclude that the Board's interpretation is reasonable and entitled to deference under *Chevron*. We therefore deny Coyomani's petition.

## I. Background

Before we describe Coyomani's path through the immigration courts, we will briefly summarize the relevant statutory scheme and a few background concepts. "Federal immigration law governs both the exclusion of aliens from admission to this country and the deportation of aliens previously admitted." *Judulang v. Holder*, 132 S. Ct. 476, 479 (2011). A "removable" individual is one whom the immigration authorities may lawfully expel from the United States; both "deportable" and "inadmissible" individuals are "removable." INA § 240(e)(2); 8 U.S.C. § 1229a(a)(2); *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 687 n.2 (7th Cir. 2008). A "deportable" individual is a non-citizen who (in many cases) was lawfully admitted into the United States, but who later became removable for any of a number of reasons specified in INA § 237(a) (for instance, by committing a specified offense). *See generally* AUSTIN T. FRAGOMEN, JR. & STEVEN C. BELL, IMMIGRATION FUNDAMENTALS 1-28 to -30, 7-11 (4th ed. 2013). An "inadmissible" individual is a non-citizen who (in many cases) was not formally admitted into the country, and who is removable for any of several reasons specified in INA § 212(a) (for example, by committing a crime involving moral turpitude). *See id. See generally Xi v. INS*, 298 F.3d 832, 838 (9th Cir. 2002) (discussing these terms and certain of their

differences). However, a removable individual (whether inadmissible or deportable) is sometimes eligible to seek "cancellation of removal," a form of discretionary relief that the Attorney General may grant. *See* INA § 240A; 8 U.S.C. § 1229b. To be eligible for cancellation of removal, a non-permanent resident alien like Coyomani must satisfy four conditions. *See* INA § 240A(b)(1); 8 U.S.C. § 1229b(b)(1).

Only one of those conditions is relevant in this case: the requirement that Coyomani "has not been convicted of an offense under [INA] section 212(a)(2), 237(a)(2), or 237(a)(3)."[2] INA § 240A(b)(1)(C); 8 U.S.C. § 1229b(b)(1)(C). Section 237(a)(3)—relating to the fraudulent obtainment or misuse of a visa or other entry document—is not relevant in this case, but the other two cross-referenced sections are. As relevant here, INA § 212(a)(2) states that an alien is inadmissible if he commits a crime involving moral turpitude (a "CIMT," for short) and the maximum sentence that can be imposed exceeds one year; and § 237(a)(2) provides that an alien is deportable if he commits any of a number of crimes, including "an aggravated felony at any time after admission."

We now turn to the specifics of Coyomani's case. Coyomani, a native and citizen of Mexico, entered the United States without inspection in 1997. In 2000, he was convicted in Illinois state court of domestic battery and of resisting a peace officer. In 2009, the Department of Homeland

---

[2] The other three elements are presence in the United States for a continuous period of 10 years, good moral character, and a showing that removal would result in exceptional hardship to the alien's U.S. citizen spouse, parent, or child. *See* INA § 240A(b)(1); 8 U.S.C. § 1229b(b)(1).

Security placed Coyomani in removal proceedings, charging him with inadmissibility as an alien present in the United States without being admitted or paroled, *see* INA § 212(a)(6)(A)(i); 8 U.S.C. § 1182(a)(6)(A)(i), and as an alien who had been convicted of a CIMT, *see* INA § 212(a)(2)(A)(i)(I); 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Later in 2009, Coyomani appeared before an immigration judge (IJ), with counsel. He denied one ground of removability—the charge that he had committed a CIMT—but he conceded the other—that he was removable because he, as a non-citizen, was present in the United States without being admitted or paroled. Nonetheless, he sought cancellation of removal as a non-lawful permanent resident. The IJ concluded that Coyomani was both removable and ineligible for cancellation of removal.

The IJ found that Coyomani was removable because he was present without being admitted or paroled. However, the IJ did not sustain the other ground of removability: a CIMT conviction under INA § 212(a)(2). Although Coyomani was convicted of domestic battery, which qualifies as a CIMT, the IJ found that Coyomani "probably" satisfied the statutory exception due to the brevity of his sentence. *See* INA § 212(a)(2)(A)(ii)(II); 8 U.S.C. § 1182(a)(2)(A)(ii)(II). The IJ further determined that Coyomani's other offense, resisting a peace officer, did not qualify as a CIMT.

Next, the IJ found that Coyomani was ineligible for cancellation of removal because he had been convicted of "an offense under" INA § 237(a)(2)—specifically, "an aggravated felony," *id.* § 237(a)(2)(A)(iii). Essentially, the same crime—state domestic battery—had different implications for different sections of the INA, because § 212(a)(2) has a pertinent

exception whereas § 237(a)(2) does not. The IJ noted that the Seventh Circuit had already considered the statute under which Coyomani was convicted, 720 ILCS 5/12-3.2(a)(1). *See LaGuerre v. Mukasey*, 526 F.3d 1037 (7th Cir. 2008). In that case, we held that domestic violence, as defined by the Illinois statute, was a crime of violence because "it has as an element the use of physical force … . Therefore, we concur with the IJ that LaGuerre's domestic battery conviction is an aggravated felony that subjects LaGuerre to deportation." *Id.* at 1039 (citing 8 U.S.C. § 1101(a)(43)(F)). In sum, because Coyomani had been convicted of a crime "under" INA § 237(a)(2), the IJ found him ineligible for cancellation of removal.

Coyomani had argued before the IJ (as he does on appeal) that § 237(a)(2) does not apply to him, because § 237(a)(2) provides that an alien is *deportable* if he commits an aggravated felony *after admission*, but Coyomani was never admitted. In Coyomani's view, he is subject only to § 212, under which he might be eligible for cancellation of removal. The IJ found "a certain appeal to that argument," but held that it was foreclosed by the BIA's decision in *Matter of Cortez*, 25 I. & N. Dec. 301 (B.I.A. 2010). In that case, the Board explained that the provision that deals with eligibility for cancellation of removal cross-references three other INA sections. The Board held that only part of the cross-referenced provisions matters when determining eligibility for cancellation of removal. Specifically, the Board would look only at the elements of the crime and the sentence potentially imposed; it would not consider the portions of the cross-referenced provisions that refer to an alien's immigration status—words like "after admission" and "deportable." *Id.* at 308. The IJ deferred to the Board's interpretation, "since the

Seventh Circuit has not addressed this issue." Therefore, the IJ dismissed Coyomani's request for cancellation of removal.

Coyomani appealed to the Board, which agreed with the IJ's analysis and conclusion. Relying on *Cortez* and *Matter of Almanza*, 24 I. & N. Dec. 771 (B.I.A. 2009), the Board held that an alien convicted of an offense described under INA § 237(a)(2) is ineligible for cancellation of removal under INA § 240A(b)(1)(C), irrespective of whether the alien is charged with removal under INA § 212 (as an inadmissible alien) or § 237 (as a deportable alien). The Board rejected Coyomani's argument that the Second Circuit's recent decision in *Reyes v. Holder*, 714 F.3d 731 (2d Cir. 2013), required a different result. (We address that decision below.) Coyomani petitioned our court for review of the Board's decision.

## II. Discussion

Whether an alien is statutorily eligible for cancellation of removal is a question of law that we have jurisdiction to review. *See* 8 U.S.C. § 1252(a)(2)(D); *Iddir v. INS*, 301 F.3d 492, 496–98 (7th Cir. 2002). Where, as here, the Board adopts the IJ's opinion and also supplements it with the Board's own reasoning, we review both decisions. *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011). We review questions of statutory interpretation de novo, though we often apply the familiar *Chevron* framework. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). This framework applies to the Board's interpretations of the INA so long as (1) the Board's reasoning is thorough, *see Mata-Guerrero v. Holder*, 627 F.3d 256, 259 (7th Cir. 2010); and (2) the Board's decision is issued by a multi-member panel, or relies on a Board opinion that was issued by a multi-member panel, *Lagunas-Salgado v.*

*Holder*, 584 F.3d 707, 711 (7th Cir. 2009). The Board's opinion in this case meets these requirements. At *Chevron*'s first step, we determine—using ordinary principles of statutory inter-pretation—whether Congress has directly spoken to the pre-cise question at issue. *Chevron*, 467 U.S. at 842–43 & n.9. If Congress has done so, our inquiry ends there. *Id.* at 842–43. If not, then Congress has left the "administrative agency with discretion to resolve a statutory ambiguity," *Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008), so at step two, we require only that the agency's interpretation be reasonable.

### A. *Chevron* step one

We first consider whether Congress has directly an-swered the specific question in this case: whether INA § 240A(b)(1)(C)—which cross-references three other sections of the INA—clearly meant to cross-reference only the crime/punishment language of those three provisions. Recall that the Attorney General may cancel removal of an inad-missible or deportable alien if, among other things, "the al-ien … has not been convicted of an offense under [INA] sec-tion 212(a)(2) [or] 237(a)(2)." INA § 240A(b)(1)(C); 8 U.S.C. § 1229b(b)(1)(C). The pertinent cross-referenced provision in this case is INA § 237(a)(2), the relevant part of which states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii). Reading these two provisions to-gether, the statute effectively says that the Attorney General may cancel removal for an *inadmissible or deportable* alien who has not been convicted of an offense under another provision of the statute that speaks explicitly, and only, in terms of *deportable* aliens. It is strange and confusing to use cross-references in this way, as one provision refers to two

classes of aliens but then cross-references a different provision that specifically refers only to one such class, making the precise interaction of the two provisions unclear.

One way to demonstrate the ambiguity in this case is to consider the parties' differing interpretations. The government says that INA § 240A(b)(1)(C) does not cross-reference *all* of §§ 212(a)(2), 237(a)(2), and 237(a)(3), but rather, refers only to the *crime* and *punishment* in those sections. This reading omits § 237(a)(2)'s reference to the immigration status of the particular individual. Coyomani, on the other hand, reads § 240A(b)(1)(C) as saying that inadmissible aliens are ineligible for cancellation of removal only if they commit an offense under § 212(a)(2), while deportable aliens are ineligible only if they commit an offense under § 237(a)(2) or (a)(3). Under his interpretation, he might be eligible for cancellation of removal.

Both sides' interpretations help bring sense to a provision, § 240A(b)(1)(C), that refers to inadmissible *and* deportable individuals, but then cross-references provisions that (on their own) apply only to inadmissible *or* deportable individuals. However, neither interpretation is obviously required by the statute and both interpretations arguably read words out of the statute.[3] The government probably has the

---

[3] The Board's interpretation of INA § 240A(b)(1)(C) gives effect only to part of § 237(a)(2)—the words, "Any alien who is convicted of an aggravated felony." This interpretation does not give effect to the references to "admission" and "deportable." Similarly, Coyomani's reading of INA § 240A(b)(1)(C) twists the language so that an inadmissible alien, for instance, is ineligible for cancellation only if he is convicted of an offense under § 212(a)(2), even though § 240A(b)(1)(C) cross-references two other provisions as well.

better interpretation and probably reads less out of the statute than does Coyomani. But there is a distinction between "clear" meaning and a "better" reading. *Cf.* Note, *"How Clear is Clear" in* Chevron*'s Step One?*, 118 HARV. L. REV. 1687 (2005) (exploring this distinction).

In this case, there was a much simpler, clearer, and more direct way for Congress to convey the meaning that the Board gives the statutory phrase: simply list the crimes (e.g., "aggravated battery") rather than cross-referencing provisions that list crimes committed by individuals with a particular immigration status. In other words, Congress could simply have said, "the Attorney General may cancel removal for an inadmissible or deportable alien who has not been convicted of an aggravated felony, a CIMT, etc." Moreover, when Congress wanted to focus on the elements of a crime and the duration of the punishment—which is the gloss the Board gives § 240A(b)(1)(C)—it appears that Congress knew how to do so clearly. Indeed, that type of language appears in the INA in a section that § 240A(b)(1)(C) itself cross-references. *See* INA § 212(a)(2)(A)(i) ("[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of … a crime involving moral turpitude…."); *id.* § 212(a)(2)(A)(ii)(II) (duration of possible and actual sentence); 8 U.S.C. § 1182(a)(2)(A)(i)–(ii). *See generally INS v. St. Cyr*, 533 U.S. 289, 318–19 (2001) (interpreting one section of a statute in light of other, clearer sections in the same statute). In light of the foregoing analysis—which suggests some confusion, potential contradictions, and a much clearer way to make the point that Congress may have been trying to make—we cannot say that INA § 240A(b)(1)(C) is "clear" at *Chevron*'s first step.

For his part, Coyomani argues that in light of a recent
Second Circuit decision, it is clear that his interpretation is
correct. We disagree. In *Reyes v. Holder*, 714 F.3d 731 (2d Cir.
2013), the Second Circuit was interpreting a regulation,
promulgated pursuant to the Nicaraguan Adjustment and
Central American Relief Act of 1997 (NACARA), that gives
the Attorney General discretion to cancel the alien's removal
so long as the alien is not "inadmissible under section
212(a)(2) or (3) or deportable under section 237(a)(2), (3) or
(4)" of the INA. 8 C.F.R. § 1240.66(b)(1). The Board had
found that Reyes, an alien who had not been admitted, was
ineligible for cancellation of removal because he had a con-
viction that would make an *admitted* alien "deportable" un-
der INA § 237(a)(2). The Second Circuit found the Board's
interpretation inconsistent with the "plain language" of the
regulation, under which "an applicant's admission status
(*i.e.*, admitted or not admitted) is critical when determining
an alien's eligibility for … cancellation of removal." 714 F.3d
at 736. In other words, the *Reyes* court found that the regula-
tion explicitly treated inadmissible aliens differently (and
more favorably) than deportable aliens. *Id.*

*Reyes* does not help Coyomani, though, because the two
statutory provisions in his case seem to conflict—one provi-
sion, INA § 237(a)(2), distinguishes between inadmissible
and deportable aliens, whereas the other, § 240A(b)(1)(C),
does not. Thus, the regulation at issue in *Reyes* possesses the
clarity that the statute in Coyomani's case lacks. Moreover,
the *Reyes* court relied on the Board's approach in *Cortez*,
which if anything seems to support the government's posi-
tion in this case. *See* 714 F.3d at 737. Finally, the Second Cir-
cuit was interpreting a regulation promulgated pursuant to a

different statute than the one at issue here. For these reasons, Coyomani's argument is unconvincing.

Meanwhile, the government implies that if we find INA § 240A(b)(1)(C) ambiguous (as we do), we are essentially saying that it's possible to construe this provision as treating inadmissible individuals more favorably than deportable individuals (because there would be two grounds for finding deportable aliens ineligible for cancellation of removal, but only one for finding inadmissible aliens ineligible). It is true that, if adopted by the Board, such a reading could in some cases reward those who enter the country unlawfully vis-à-vis those who enter lawfully. While that result might seem anomalous, several courts have observed that there may be good reasons for it, so we are untroubled by this possibility. *See Reyes*, 714 F.3d at 737 ("Congress's harsher treatment of legal permanent residents ('LPRs') may be justified on the basis that an LPR's violation of American laws represents a greater betrayal or poses a heightened concern of recidivism, and therefore calls for harsher measures under the immigration laws.") (citation and internal quotation marks omitted); *Taniguchi v. Schultz*, 303 F.3d 950, 957–58 (9th Cir. 2002) (noting that lawful permanent residents "enjoy substantial rights and privileges not shared by other aliens, and therefore 'it is arguably proper to hold them to a higher standard and level of responsibility than [non LPRs]'" (quoting *Moore v. Ashcroft*, 251 F.3d 919, 925 (11th Cir. 2001))).

Finally, we realize that some of our sister circuits consider legislative history at this juncture, *see, e.g.*, *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652–53 (9th Cir. 2004), but we prefer to save that inquiry for *Chevron*'s second step. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459,

465 (7th Cir. 2012) ("In this Circuit, 'we seem to lean toward reserving consideration of legislative history … until the second *Chevron* step.'" (quoting *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998))). For these reasons, we do not find the meaning of INA § 240A(b)(1)(C) "clear" at *Chevron*'s first step. We recognize that the Ninth Circuit found this provision clear at *Chevron*'s first step, concluding that the BIA's interpretation was "[t]he most logical reading." *Gonzalez-Gonzalez*, 390 F.3d at 652. However, there is a difference—which may be important in some *Chevron* cases—between clear meaning and the best of several interpretive choices. In any event, we agree with the Ninth Circuit that the Board's reading is probably the most plausible, so we find the Board's interpretation reasonable at step two.

### B. *Chevron* step two

At the second stage of the *Chevron* analysis, we determine whether the agency's interpretation is reasonable. Our review at this stage is deferential; we will uphold the agency's interpretation so long as it is "a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The government explains the Board's approach as follows: "in determining whether offenses are 'described under' INA §§ 212(a)(2), 237(a)(2), and 237(a)(3) for purposes of the eligibility criteria of INA § 240A(b)(1)(C), only language specifically pertaining to the criminal offense, such as the offense itself and the sentence imposed or potentially imposed, should be considered." Gov't Brief, 13–14 (citing *Cortez*, 25 I. & N. Dec. at 307–08; *Almanza*, 24 I. & N. Dec. at 771). Under this interpretation, it does not matter whether the particular individual is "inadmissible" or "deportable."

This interpretation is reasonable. It is a sensible way (and perhaps the only way) to give effect to each word of INA § 240A(b)(1)(C). To be sure, this interpretation does not give effect to certain words in the cross-referenced provisions, but as noted, *every* possible construction necessarily reads out certain terms. And it is quite possible that by using the phrase "offense under," Congress meant to do exactly what the Board has done (even if Congress could have achieved this result much more clearly). *See Gonzalez-Gonzalez*, 390 F.3d at 651–52. In addition, the Board's interpretation gains further support from the fact that Congress has more precisely distinguished between "inadmissibility" and "deportability" in other provisions of the INA. *See, e.g.,* INA § 240A(d)(1) (explaining that, when measuring an alien's period of continuous physical presence in the United States, the clock stops "when the alien has committed an offense … that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest"); 8 U.S.C. § 1229b(d)(1); *Cortez*, 25 I. & N. Dec. at 308.

Finally, while we do not need to look to drafting history to resolve this dispute, it lends further support to the Board's interpretation. An earlier version of INA § 240A(b)(1) allowed cancellation of removal only for an alien who "has at no time been convicted of an offense that would render the alien inadmissible under section 212(a)(2)(A) or deportable under … sections 237(a)(2) or 237(a)(3)." H.R. Conf. Rep. No. 828, 104th Cong., 2d Sess. 213 (1996). This earlier version would have supported Coyomani's interpretation. *See Gonzalez-Gonzalez*, 390 F.3d at 652–53. As enacted, however, the section does not refer to (or distinguish between) grounds of inadmissibility and grounds of deportability; instead, the

enacted text allows cancellation for an alien who "has not been convicted of an offense under [INA] section 212(a)(2), 237(a)(2), or 237(a)(3)." *Id.*

### III. Conclusion

Because the Board has reasonably resolved a statutory ambiguity, we defer to its interpretation under *Chevron*. Coyomani's petition for review is therefore DENIED.