**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-1148**

_____

MARINA HERNANDEZ, a/k/a Marina Hernandez Hernandez,

        Petitioner,

      v.

ERIC H. HOLDER, JR., Attorney General,

        Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued: January 29, 2015        Decided: April 14, 2015

_____

Before TRAXLER, Chief Judge, and NIEMEYER and MOTZ, Circuit Judges.

_____

Petition denied by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Motz joined.

_____

**ARGUED:** Ofelia Lee Calderon, Anam Rahman, CALDERÓN SEGUIN PLC, Fairfax, Virginia, for Petitioner. Monica G. Antoun, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Stuart F. Delery, Assistant Attorney General, Shelley R. Goad, Assistant Director, Nancy K. Canter, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

NIEMEYER, Circuit Judge:

The Board of Immigration Appeals ("BIA") denied the application of Marina del Carmen Hernandez, a native and citizen of El Salvador, for cancellation of removal under 8 U.S.C. § 1229b(b)(1) because Hernandez had committed a "crime involving moral turpitude" -- a petit-larceny offense -- that rendered her ineligible for such relief. See 8 U.S.C. § 1229b(b)(1)(C) (prohibiting the Attorney General from canceling the removal of an alien who has "been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3)"); id. § 1227(a)(2)(A)(i) (listing as an offense "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed"). Hernandez argued that the cross-reference in § 1229b(b)(1)(C) to § 1227(a)(2) did not apply to her because § 1227(a)(2) makes deportable only persons "in and admitted to the United States," and Hernandez had never been lawfully admitted. Rather, she maintained that only the cross-reference to § 1182(a)(2) applied and that that section rendered her prior crime irrelevant because it contained a "petit-offense exception." The BIA rejected this argument, relying on its precedential decision in Matter of Cortez Canales, 25 I. & N. Dec. 301, 306–08 (2010), which read § 1229b(b)(1)(C) to cross-reference only the offenses listed in the three cross-referenced sections, not the substantive operation of those offenses. Thus, even though the

2

substantive operation of § 1227(a)(2) did not apply to Hernandez, the offense listed in § 1227(a)(2) did apply, and that provision contains no petit-offense exception.

We conclude that the BIA's reading of § 1229b(b)(1)(C) is the most logical reading and therefore is, at least, a permissible interpretation of the statute, entitling the BIA's decision to Chevron deference. Thus, we affirm the BIA and deny Hernandez's petition for review.

I

Hernandez entered the United States sometime in 1997 without lawful admission or parole after inspection and has, since then, lived continuously in Virginia with her four children, who are U.S. citizens. In 2001, Hernandez was granted "temporary protected status," which affords eligible aliens protection from removal to certain countries upon the Attorney General's determination that conditions in those countries would prevent their safe return. See 8 U.S.C. § 1254a.

In January 2007, Hernandez was convicted of petit larceny under Va. Code Ann. § 18.2-96 and was sentenced to 30 days' confinement in jail. After she failed to respond to a request for documentation regarding her criminal record, U.S. Citizenship and Immigration Services terminated her application to renew her temporary protected status.

3

In March 2009, the U.S. Department of Homeland Security commenced removal proceedings against Hernandez, charging her with being "present in the United States without being admitted or paroled," in violation of 8 U.S.C. § 1182(a)(6)(A)(i). When she appeared before an immigration judge in March 2013, she conceded removability but filed an application for cancellation of removal under § 1229b(b)(1), alleging that her children would suffer hardship if she were not permitted to remain in the United States. The immigration judge pretermitted her application, holding that her petit-larceny conviction rendered her ineligible for the relief she requested, and ordered that she be removed to El Salvador.

The BIA dismissed Hernandez's appeal. Noting that Hernandez had conceded that petit larceny -- a Class 1 misdemeanor under Va. Code Ann. § 18.2-96, punishable by confinement in jail for not more than 12 months, id. § 18.2-11 -- is a crime involving moral turpitude, the BIA held that Hernandez was ineligible for cancellation of removal under § 1229b(b)(1)(C) because she had been convicted of "an offense under section . . . 1227(a)(2)" -- specifically, "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed," § 1227(a)(2)(A)(i). The BIA rejected her argument that the petit-offense exception to § 1182(a)(2), a section that is also cross-referenced in § 1229b(b)(1)(C),

preserved her eligibility for cancellation of removal, holding that the exception had no applicability to offenses described in § 1227(a)(2). The BIA also rejected Hernandez's argument that the offenses in § 1227(a)(2) and § 1227(a)(3) applied only to aliens who, unlike Hernandez, had been admitted to the United States, while the offenses in § 1182(a)(2) applied only to aliens who had not been admitted. To do so, it relied on its prior decision in Cortez Canales, which rejected the distinction that Hernandez was trying to make.

From the BIA's decision, Hernandez filed this petition for review.

II

In her petition, Hernandez contends that even though she committed a crime involving moral turpitude for which a sentence of one year could have been imposed, she nonetheless remains eligible for cancellation of removal under § 1229b(b)(1) because her offense was excepted by the petit-offense exception contained in § 1182(a)(2). In response to the government's position that § 1227(a)(2), which contains no petit-offense exception, also applies, Hernandez contends that § 1229b(b)(1)(C)'s cross-reference to § 1227(a)(2) pertains only to aliens who, unlike her, were admitted and are now deportable. She argues further that even if § 1229b(b)(1)(C) generally

5

cross-references the offenses in § 1227(a)(2) regardless of an alien's admission status, § 1227(a)(2)(A)(i) does not apply to unadmitted aliens because that section only makes an alien deportable upon conviction of a crime involving moral turpitude that was committed "within five years . . . after the date of admission." (Emphasis added). Thus, Hernandez argues that only offenses under § 1182(a)(2) apply to her and that § 1182(a)(2)'s petit-offense exception preserves her eligibility for cancellation of removal.

The government contends that because § 1229b(b)(1)(C), by its plain terms, applies both to aliens previously admitted and now deportable and to aliens never admitted and now subject to removal, the provision disqualifies from eligibility for cancellation of removal the entire class of aliens who have committed any offense listed in any of the three sections cross-referenced in § 1229b(b)(1)(C). It argues that § 1229b(b)(1)(C) does not cross-reference the substantive operation of those sections, but only the offenses described within them, pointing to the specific language of § 1229b(b)(1)(C) that allows the cancellation of removal for admitted and unadmitted aliens only if the alien "has not been convicted of an offense under" the three sections. To support its conclusion, the government relies on the BIA's precedential decision in Cortez Canales, which so held.

6

Because the BIA's decision and the decision in Cortez Canales involve statutory interpretation, we review the issue de novo. But in doing so, we give the BIA Chevron deference so long as its decision is a precedential decision issued by a three-judge panel. See Martinez v. Holder, 740 F.3d 902, 909 (4th Cir. 2014). While the BIA's decision in this case was issued by a single BIA member, the BIA relied on Cortez Canales, which was decided by a three-judge panel, thus entitling it to Chevron deference. See, e.g., Escobar v. Holder, 657 F.3d 537, 542 (7th Cir. 2011); Efagene v. Holder, 642 F.3d 918, 920 (10th Cir. 2011); Marmolejo-Campos v. Holder, 558 F.3d 903, 911 (9th Cir. 2009). Thus, Cortez Canales controls to the extent that "Congress has not directly addressed the precise question at issue" and "the [BIA]'s answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).

To begin with, we recognize that the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537, often makes the distinction between an alien who has never been admitted to the United States and an alien who has been admitted but who has subsequently become deportable. Both inadmissible and deportable aliens, however, are removable, albeit sometimes for different grounds. See Judulang v. Holder, 132 S. Ct. 476, 479 (2011). Compare § 1182(a) (cataloging the grounds that render

7

an alien "ineligible <u>to be admitted</u> to the United States" (emphasis added)), <u>with</u> § 1227(a) (listing the grounds <u>for deportation</u> of an alien "in and admitted to the United States"). Moreover, both inadmissible and deportable aliens can apply for discretionary cancellation of removal under § 1229b(b)(1). And when they do, the specific criteria that they must satisfy are the same regardless of whether they are inadmissible or deportable. <u>See</u> <u>id.</u> § 1229b(b)(1) (providing that the Attorney General may cancel removal of "an alien who is <u>inadmissible or deportable</u>," so long as the alien satisfies the specified criteria). Thus, regardless of whether Hernandez is inadmissible or deportable, she is eligible for cancellation of removal if she "has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3)." <u>Id.</u> § 1229b(b)(1)(C).

<u>Section 1182(a)(2)</u> provides that an alien is "ineligible to be admitted to the United States" if he has been convicted of certain listed crimes, including a crime involving moral turpitude. But the crime involving moral turpitude listed under this section is subject to a petit-offense exception, which provides that a conviction for a crime involving moral turpitude does not render an alien inadmissible if (1) the alien has been convicted of a single crime; (2) the maximum penalty for the crime committed "[does] not exceed imprisonment for one year";

8

and (3) the alien "[is] not sentenced to a term of imprisonment in excess of 6 months." § 1182(a)(2)(A)(ii)(II). Section 1227(a)(2) provides that an alien "in and admitted to the United States" is deportable if he has been convicted of certain listed crimes, including a crime involving moral turpitude for which a sentence of one year or longer may be imposed, but only if the crime is committed within five years after the date of admission. Id. § 1227(a)(2)(A)(i). And § 1227(a)(3) provides that an alien is deportable if he has been convicted of a failure to register or a falsification of certain entry documents.

It is important to note that the cross-referenced sections -- § 1182(a)(2), § 1227(a)(2), and § 1227(a)(3) -- do not themselves criminalize any behavior. Rather, each lists offenses that produce various immigration consequences. For example, § 1227(a)(2)(A)(i) provides that any alien who has been convicted of a qualifying crime involving moral turpitude during the specified five-year period faces the immigration consequence of deportation. Section 1229b(b)(1)(C), however, does not appear to import the time constraint or the immigration consequence of § 1227(a)(2)(A)(i) because § 1229b(b)(1)(C) itself deals with its own consequence -- the ineligibility for cancellation of removal. Thus, the provision appears to direct consideration of only the offense in the cross-referenced

9

section.  Moreover, because § 1229b(b)(1)(C) addresses both admitted and unadmitted aliens alike, the fact that § 1227(a)(2)(A)(i) renders deportable only an alien who has been admitted and only then if the alien committed the offense within a specified time period is irrelevant for purposes of describing crimes relevant to the availability of cancellation of removal under § 1229b(b)(1)(C).  In short, § 1229b(b)(1)(C) cross-references only the offenses that preclude cancellation of removal, not the immigration consequences that stem from those offenses.

This construction is further indicated by the language of § 1229b(b)(1)(C)'s surrounding provisions.  Section 1229b(b)(2)(A)(iv) permits the Attorney General to cancel the removal of an inadmissible or deportable alien who has been battered by a spouse or parent of a U.S. citizen if, inter alia, "the alien is not inadmissible under paragraph (2) or (3) of section 1182(a) . . . [and] is not deportable under paragraphs (1)(G) or (2) through (4) of section 1227(a)." (Emphasis added).  Similarly, under the "stop-time rule" of § 1229b(d)(1)(B), any period of continuous residence or continuous physical presence in the United States is deemed to end for purposes of § 1229b "when the alien has committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible to the United States under section 1182(a)(2)

10

. . . or removable from the United States under section 1227(a)(2) or 1227(a)(4)." (Emphasis added). Thus, whereas § 1229b(b)(2)(A)(iv) and § 1229b(d)(1)(B) explicitly specify that the crimes listed in the cross-referenced statutes must render the specific alien in question inadmissible or deportable, § 1229b(b)(1)(C) lacks such explicitness, cross-referencing only the crimes. Had Congress wanted § 1229b(b)(1)(C) to be interpreted in the same manner as § 1229b(b)(2)(A)(iv) and § 1229b(d)(1)(B), it would likely have used similar language. See Cortez Canales, 25 I. & N. Dec. at 308 (concluding that the stop-time rule "clearly evidences Congress' understanding of how to draft statutory language requiring an alien to be inadmissible or removable under a specific charge in section [1182] or [1227]").

Hernandez maintains that if Congress had intended to cross-reference only the offenses listed in the cross-referenced sections and not their immigration consequences, it would have used the phrase "an offense referred to in," as it did in the stop-time rule, rather than the phrase "an offense under." Congress, however, "is permitted to use synonyms in a statute." Tyler v. Cain, 533 U.S. 656, 664 (2001); see also, e.g., Moore v. Harris, 623 F.2d 908, 914 (4th Cir. 1980) ("Inadvertent statutory usage of synonyms in parallel sections does not

11

require us to conjure up a distinction which would violate the statute's raison d'etre").

Accordingly, the most natural reading of § 1229b(b)(1)(C) is that a conviction for any offense listed in § 1182(a)(2), § 1227(a)(2), or § 1227(a)(3) renders an alien ineligible for cancellation of removal, regardless of the alien's status as an admitted or unadmitted alien. Accord Gonzalez-Gonzalez v. Ashcroft, 390 F.3d 649, 650 (9th Cir. 2004) (holding that an unadmitted alien who was convicted of a crime of domestic violence -- a conviction that renders an admitted alien deportable under § 1227(a)(2) but that does not render an unadmitted alien inadmissible under § 1182(a)(2) -- was ineligible for cancellation of removal because "[t]he plain language of § 1229b indicates that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole"); see also Nino v. Holder, 690 F.3d 691, 697–98 (5th Cir. 2012) (rejecting an admitted alien's argument that a crime-involving-moral-turpitude offense is only "under" § 1227(a)(2)(A)(i) for purposes of § 1229b(b)(1)(C) if the conviction takes place within five years after the date of admission, and holding that "Section 1229b(b)(1)(C), without ambiguity, references Section 1227(a)(2) in order to identify the kinds of offenses that will make an alien ineligible for cancellation of removal"). But see Coyomani-Cielo v. Holder,

758 F.3d 908, 910–11 (7th Cir. 2014) (holding that § 1229b(b)(1)(C) is ambiguous because it "effectively says that the Attorney General may cancel removal for an <u>inadmissible</u> or <u>deportable</u> alien who has not been convicted of an offense under another provision of the statute that speaks explicitly, and only, in terms of <u>deportable</u> aliens").

While our conclusion might not necessarily exclude some other possible interpretation, we need not resolve whether our reading of § 1229b(b)(1)(C) is the only possible reading of the statute because our reading is consistent with the construction adopted by the BIA in <u>Cortez Canales</u>. <u>See</u> 25 I. & N. Dec. at 307 ("[I]n determining which offenses are 'described under' sections [1182(a)(2), 1227(a)(2), and 1227(a)(3)] for purposes of section [1229b(b)(1)(C)], only language specifically pertaining to the criminal offense, such as the offense itself and the sentence imposed or potentially imposed, should be considered. That is, . . . the statutory language of sections [1182(a)(2), 1227(a)(2), and 1227(a)(3)] pertaining only to aspects of immigration law, such as the requirement that the alien's crime be committed 'within five years . . . after the date of admission,' is not considered." (second alteration in original)). Thus, for the same reasons we have given for our reading of § 1229b(b)(1), we conclude that the BIA's reading is patently reasonable and therefore entitled to deference. <u>Accord</u>

13

Coyomani-Cielo, 758 F.3d at 915 (holding that Cortez Canales is a reasonable construction of § 1229b(b)(1)(C) because "[i]t is a sensible way (and perhaps the only way) to give effect to each word of [§ 1229b(b)(1)(C)]").

## III

We find Hernandez's various arguments against affording Chevron deference to the BIA's construction unpersuasive. First, she notes that "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise," United States v. Urban, 140 F.3d 229, 232 (3d Cir. 1998) (quoting United States v. 6109 Grubb Road, 886 F.2d 618, 626 (3d Cir. 1989)) (internal quotation marks omitted), and therefore she maintains that § 1229b(b)(1)'s statutory language permitting cancellation of removal of "an alien who is inadmissible or deportable from the United States" must be read disjunctively, such that "inadmissible" and "deportable" are given separate meanings. She argues that this is especially so because "[t]he distinction between exclusion and deportation has long been recognized in immigration law." But the BIA's construction of § 1229b(b)(1)(C) does not obliterate the distinction between inadmissible and deportable aliens. Rather, it provides that any alien who meets the criteria for either inadmissibility or

14

deportability, as those terms are used throughout the Immigration and Nationality Act, is ineligible for cancellation of removal if he has "been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3)." Thus, the use of the disjunctive defines the class of aliens to which § 1229b(b)(1)(C) is applicable, referring to both inadmissible and deportable aliens and treating them alike.

Second, relying on Reyes v. Holder, 714 F.3d 731 (2d Cir. 2013), Hernandez contends that by using the terms "inadmissible" and "deportable" in § 1229b(b)(1)(C), Congress "demonstrate[d] that an applicant's admission status is critical when determining an alien's eligibility for cancellation of removal." In Reyes, an unadmitted alien sought "special rule cancellation of removal," 714 F.3d at 732, which permits the Attorney General to cancel the removal of qualified aliens from specific countries as long as they are not "inadmissible under section [1182(a)(2)-(3)] or deportable under section [1227(a)(2)-(4)]," 8 C.F.R. § 1240.66(b)(1). The Second Circuit held that the alien's conviction of "menacing in the second degree" did not render him ineligible for discretionary relief, even though it was listed among the offenses that would render an admitted alien deportable under § 1227(a)(2), because the offense was not listed in § 1182(a). Reyes, 714 F.3d at 737. Hernandez's reliance on Reyes, however, is misplaced because the language of

15

§ 1229b(b)(1)(C) differs substantially from the language of 8 C.F.R. § 1240.66(b)(1), which mirrors the structure of § 1229b(b)(2)(A)(iv) and § 1292b(d)(1)(B). Accord Coyomani-Cielo, 758 F.3d at 913-14. And the Reyes court recognized as much, specifically distinguishing Cortez Canales on that ground. Reyes, 714 F.3d at 737.

Third, Hernandez argues that the BIA's construction requires rewriting the statute to read that an alien is ineligible for cancellation of removal if he has "been convicted of an offense [described] under §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3)]." But an offense can only be "under" one of the cross-referenced statutes if it is described or listed therein, as those statutes are not themselves criminal statutes. Indeed, it is Hernandez who would rewrite the statute so as to read, "The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of an offense [rendering the alien inadmissible] under section 1182(a)(2) [or deportable under sections] 1227(a)(2) or 1227(a)(3)."

Fourth, Hernandez argues that the BIA's construction "leads to the bizarre result that those who may have a conviction of a crime involving moral turpitude in another country prior to being admitted to the United States may be barred from ever applying for cancellation of removal before they have even

16

stepped foot in the United States." But this result is not bizarre, especially because § 1182(a)(2) itself provides that any alien who has been convicted of a crime involving moral turpitude, as qualified therein, is ineligible to be admitted to the United States. And even if this result were bizarre, it is not for this court to criticize Congress' policy choices.

Fifth, Hernandez argues that Cortez Canales is inconsistent with the BIA's earlier rulings in Matter of Garcia-Hernandez, 23 I & N. Dec. 590, 592-93 (2003), and Matter of Gonzalez-Silva, 24 I. & N. Dec. 218, 220 (2007), in which the BIA held, respectively, that an offense is not under § 1182(a)(2) if it is covered by the petit-offense exception and that an offense is not under § 1227(a)(2)(E)(i) if it preceded that section's effective date. But this argument is no more than a disagreement with the way that the BIA distinguished those cases in Cortez Canales itself. As to Garcia-Hernandez, the BIA explained that the petit-offense exception contains language pertaining to "the sentence imposed or potentially imposed" and that such language must be considered because it "specifically pertain[s] to the criminal offense." Cortez Canales, 25 I. & N. Dec. at 307. And with respect to Gonzalez-Silva, the BIA explained that "Congress expressly stated that section [1227(a)(2)(E)(i)] applies only to those convictions occurring after . . . September 30, 1996," and that the BIA was

17

bound to defer to "this express statement of congressional intent." Id. at 310. We conclude that the BIA's reasons are not unprincipled.

Sixth and finally, Hernandez argues that the court must not give § 1229b(b)(1)(C) "a more expansive interpretation that restricts eligibility for relief to aliens facing deportation" because "the rule of lenity stands for the proposition that ambiguities in deportation statutes should be construed in favor of the noncitizen," Hosh v. Lucero, 680 F.3d 375, 383 (4th Cir. 2012). But because "[t]he rule of lenity is a last resort, not a primary tool of construction," id. (alteration in original) (quoting United States v. Ehsan, 163 F.3d 855, 858 (4th Cir. 1998)) (internal quotation marks omitted), it applies only where "there is a grievous ambiguity or uncertainty in the statute," id. (quoting Muscarello v. United States, 524 U.S. 125, 138–39 (1998)) (internal quotation marks omitted). Where, as here, the ambiguity is not grievous, courts must defer to the BIA's construction. Id.

* * *

In sum, we hold that Hernandez is ineligible for cancellation of removal by virtue of having "been convicted of an offense under . . . § 1227(a)(2)," a crime involving moral turpitude, punishable by a sentence of imprisonment for one year

18

or longer.  We thus affirm the decision of the BIA and deny Hernandez's petition for review.

PETITION DENIED