**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1723**

_____

FELIX JACOBO SALOMON-GUILLEN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued:  September 24, 2024                    Decided:  December 18, 2024

_____

Before DIAZ, Chief Judge, and WILKINSON and BERNER, Circuit Judges.

_____

Petition denied in part and dismissed in part by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Berner joined.

_____

**ARGUED:**  Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Craig Alan Newell, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Brian M. Boynton, Principal Deputy Assistant Attorney General, Rebekah Nahas, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

DIAZ, Chief Judge:

Felix Jacobo Salomon-Guillen petitions for review of a final order of removal of the Board of Immigration Appeals. A temporary Board member—also called a Temporary Appellate Immigration Judge—who had served multiple six-month terms participated in his appeal. Salomon-Guillen asks us to decide whether such temporary judges' terms are renewable under the regulatory provision in effect during his administrative appeal. We agree with the government that the answer is yes.

Salomon-Guillen also challenges the Board's denial of his applications for a waiver of inadmissibility and adjustment of status. But we lack jurisdiction over these issues. So we dismiss that part of his petition.

I.

A.

Salomon-Guillen and his wife, the recording artist Lucia Parker Salomon, are from El Salvador. They entered the United States in 2009. Parker Salomon entered the country on an O-1 visa—reserved for individuals with extraordinary abilities or achievements—and later became a naturalized citizen. Salomon-Guillen was admitted on an O-3 visa—reserved for family members of O-visa holders—as Parker Salomon's husband. He later became a permanent resident. Salomon-Guillen was the manager of his wife's music career.

In January 2013, Salomon-Guillen began working as a marketing director for a book publisher that HarperCollins later acquired. In that role, he issued marketing contracts to

2

a company that he controlled, without HarperCollins's knowledge of his interest in the contractor. The contracts also inflated the value of the work performed. Salomon-Guillen's scheme cost HarperCollins about $1.4 million.

The government indicted Salomon-Guillen for wire fraud. He pleaded guilty and was sentenced to 18 months' imprisonment.

## B.

Because Salomon-Guillen's conviction is an aggravated felony as defined by the Immigration and Nationality Act, the government sought to remove him from the country. 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(M)(i). Salomon-Guillen conceded that he was removable as charged, so he applied for adjustment of status under 8 U.S.C. § 1255(a). That application, if granted, would give Salomon-Guillen lawful permanent resident status. Since his conviction rendered him inadmissible to the United States and therefore ineligible for adjustment of status, he also applied for an inadmissibility waiver under 8 U.S.C. § 1182(h).

The immigration judge denied Salomon-Guillen's applications. The judge noted that the only obstacle to Salomon-Guillen's statutory eligibility for adjustment of status was his wire fraud conviction, which could be overlooked if he received the inadmissibility waiver he applied for. To get that waiver, Salomon-Guillen had to show that his removal would "result in extreme hardship" to a qualifying relative who is a United States citizen or lawful resident and that he merited a waiver in the exercise of the Attorney General's discretion. *Id.* § 1182(h)(1)(B).

3

Salomon-Guillen claimed that his removal would cause hardship to his wife and his mother, both of whom are citizens. Salomon-Guillen argued that his wife's career would suffer if he were not in the United States to serve as her manager, that they could not afford to hire a manager to replace him, and that Parker Salomon wasn't able to serve as her own manager since, as the immigration judge put it, she lacked "the capacity to do things such as contract negotiation." J.A. 312.

Salomon-Guillen also argued that his wife would experience "emotional and physical hardship" if he were removed. J.A. 312. She suffered from chronic mental health issues and was in the middle of a high-risk pregnancy at the time of the proceedings before the immigration judge. Salomon-Guillen argued that the medical care she could receive in the United States was superior to what she could receive in El Salvador. Salomon-Guillen also presented evidence that, were his wife to return with him to El Salvador, she would be unable to earn a living as a singer and would fear for her safety due to her status as a celebrity and familial ties to politicians belonging to the country's minority party.

The immigration judge wasn't convinced that the hardship to Parker Salomon qualified as extreme. He found that whether Parker Salomon remained in the United States or returned to El Salvador with Salomon-Guillen, the financial consequences were self-inflicted. The immigration judge also found unpersuasive Parker Salomon's assertions that she required specialized medical care in the United States and feared for her safety in El Salvador, reasoning that these claims relied on a series of hypotheticals.

As for Salomon-Guillen's mother, Salomon-Guillen posited that she would experience financial and emotional hardship if he were removed because she (1) would be

4

unable to travel to El Salvador to visit him, (2) had suffered stress, anxiety, and insomnia since being separated from her son, and (3) would lose her son's financial support if he were removed.

But here, too, the immigration judge was unpersuaded. The judge accepted that Salomon-Guillen's mother would "experience some financial and emotional hardship" should her son be removed, but concluded that these consequences did not "rise to the level of extreme hardship." J.A. 317.

The immigration judge also concluded that, even assuming Salomon-Guillen had met his burden to show extreme hardship, he wouldn't merit an inadmissibility waiver in the exercise of discretion because of the severity of his fraud offense and the fact that he "failed to express regret toward his fellow employees and former employers at HarperCollins, who suffered great financial harm due to [his] actions." J.A. 319. Likewise, the judge concluded that even if Salomon-Guillen received an inadmissibility waiver and was therefore statutorily eligible for adjustment of status, he wouldn't merit an adjustment as a matter of discretion.

## C.

The Board of Immigration Appeals affirmed in an opinion written by Temporary Appellate Immigration Judge Denise G. Brown. The Attorney General appointed Judge Brown to a six-month term under 8 U.S.C. § 1103(g)(1) and later reappointed her three times. Judge Brown was serving her fourth six-month term when she served on the three-judge panel that decided Salomon-Guillen's case.

5

The Board sustained the immigration judge's finding that Salomon-Guillen's removal wouldn't result in extreme hardship to Parker Salomon.[1]  According to the Board, Salomon-Guillen waived any argument that Parker Salomon would experience extreme hardship if she were to remain in the United States since he failed to challenge that finding. As a result, the Board considered only whether Parker Salomon would suffer extreme hardship if she accompanied Salomon-Guillen to El Salvador.  The Board concluded that Salomon-Guillen failed to show that (1) Parker Salomon couldn't earn a living as a singer while living in El Salvador, (2) treatment for Parker Salomon's medical issues would be unavailable in El Salvador, or (3) Parker Salomon would be unable to take security precautions to alleviate her safety concerns.

The Board also reviewed de novo whether Salomon-Guillen should receive an inadmissibility waiver in the exercise of discretion.  It concluded that the "positive equities" Salomon-Guillen presented (including the time he spent in the United States, his family ties to United States citizens, letters of support he submitted, and hardship to him and his family) didn't outweigh the negative equities of his case (his serious criminal conduct).  So the Board denied Salomon-Guillen's applications.

This petition followed.

---

[1] Salomon-Guillen didn't raise the issue of hardship to his mother on appeal to the Board and does not do so here.

6

II.

Salomon-Guillen first asks us to vacate the Board's decision and remand for consideration by a "properly appointed" Board member. Pet'r's Br. at 10. We decline to do so.

Under 8 C.F.R. § 1003.1(a)(4), temporary Board members may be appointed to "adjudicate assigned cases." The version of this regulation in effect when the Board decided Salomon-Guillen's administrative appeal authorized the Director of the Executive Office for Immigration Review to make such appointments "for terms not to exceed six months."[2] 8 C.F.R. § 1003.1(a)(4) (2022).

Salomon-Guillen argues that Judge Brown unlawfully served for longer than six months when the Board decided his appeal. The government contests the substance of this argument, but also challenges Salomon-Guillen's ability to make it. We conclude that Salomon-Guillen can indeed present this argument, but we find that it fails on the merits.

A.

We begin with the government's opposition to Salomon-Guillen's ability to raise his procedural challenge.

As with all regulations, the regulation establishing the temporary Board member position was promulgated under the Administrative Procedure Act. This statute identifies

---

[2] The regulation has since been amended to (1) clarify that the Attorney General appoints temporary Board members, and (2) reflect that such members are appointed "for *renewable* terms not to exceed six months." Expanding the Size of the Board of Immigration Appeals, 89 Fed. Reg. 22630, 22636 (Apr. 2, 2024) (emphasis added) (codified at 8 C.F.R. § 1003.1(a)(4)).

7

two kinds of regulations.  The first are "substantive" or "legislative-type" rules, which are said to "have the force of law."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 301–02 (1979).  The second are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b)(A).

The first category of rules must go through the typical notice-and-comment process and generally "create[] new law or impose[] new rights or duties."  *Child.'s Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 619–20 (4th Cir. 2018).  The second category need not.

Second category rules include agencies' "internal house-keeping measures."  *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987) (internal quotation omitted).  These rules may be promulgated under 5 U.S.C. § 301, which authorizes regulations "for the government of [a] department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property."

The government argues that the temporary Board member regulation falls into the second category, and so doesn't grant Salomon-Guillen rights that he can enforce.  The government contends that neither the Administrative Procedure Act nor the Immigration and Nationality Act grants to Salomon-Guillen a "private cause of action" to enforce the temporary Board member regulation.  And it notes that versions of the regulation were promulgated in part under § 301 without following notice-and-comment procedures.  *E.g.*, Board of Immigration Appeals: En Banc Procedures, 63 Fed. Reg. 31889, 31889 (June 11,

8

1998) ("Compliance with 5 U.S.C. [§] 553 as to notice of proposed rulemaking . . . is not necessary because this rule relates to internal agency procedure and practice.").

Salomon-Guillen responds that his argument arises under the Immigration and Nationality Act, which authorizes those subject to removal to file petitions for review in the Courts of Appeals and preserves our jurisdiction over legal questions like his procedural challenge. *See* 8 U.S.C. § 1252. The Administrative Procedure Act, in his view, is irrelevant to his ability to challenge Judge Brown's participation in his appeal before the Board.

We need not wade into this battle of competing statutes. That's because Salomon-Guillen's challenge is proper even if the Administrative Procedure Act governs. If (as the government asserts) the regulation at issue rests partly on § 301, it still affects Salomon-Guillen's rights, which his challenge to Judge Brown's appointment would vindicate.

"Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). Thus, "one under investigation with a view to deportation is legally entitled to insist upon the observance of rules promulgated by the [Attorney General] pursuant to law." *Bridges v. Wixon*, 326 U.S. 135, 153 (1945) (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 155 (1923)). Because the rules governing removal proceedings "are designed to protect the interests of the alien and to afford him due process of law," *id.* at 152, immigrants subject to removal proceedings can properly argue that the proceedings against them are procedurally flawed.

9

The Fifth Circuit has applied *Bridges* to permit a petitioner to challenge the appointment of temporary Board members. *Mboba v. Garland*, No. 21-60416, 2023 WL 4836671, at \*8 (5th Cir. July 27, 2023); *see also Carreon v. Garland*, 71 F.4th 247, 252–53 (5th Cir. 2023) (rejecting the government's argument that the appointment regulation governed internal agency procedures and concluding that a petitioner could challenge the authority of a temporary Board member as ultra vires). We agree, and therefore proceed to the merits of Salomon-Guillen's challenge.

B.

Before engaging with Salomon-Guillen's argument, we briefly sketch out the process for appointing temporary Board members.

The Board of Immigration Appeals is a creature of regulation. *See* Miscellaneous Amendments to Chapter, 23 Fed. Reg. 9115, 9117 (Nov. 26, 1958). Those regulations provide for the appointment of both permanent and temporary Board members. *See* 8 C.F.R. § 1003.1.

The version of § 1003.1 in effect when Salomon-Guillen's appeal was decided authorized the Director of the Executive Office for Immigration Review to designate current and retired immigration judges and Board members "to act as temporary Board members for terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (2022). This provision also allowed the Director, "with the approval of the Deputy Attorney General," to "designate one or more senior [Executive Office for Immigration Review] attorneys" to

10

"act as temporary Board members for terms not to exceed six months."[3] *Id.* Temporary Board members could fully participate in deciding cases but couldn't vote in "any matter decided by the Board en banc" or vote to designate a Board opinion as precedential. *Id.*; *id.* § 1003.1(g)(3).

Although the Board and the position of temporary Board member were created by regulation, the Attorney General by statute has

> such authorities and functions under . . . all . . . laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review, on the day before the effective date of the Immigration Reform, Accountability and Security Enhancement Act of 2002.

8 U.S.C. § 1103(g)(1).[4] The Attorney General has broad power to delegate authority when he "determines [the delegation] to be necessary for carrying out" his responsibilities under § 1103. *Id.* § 1103(g)(2).

---

[3] The Attorney General appoints the Director of the Executive Office for Immigration Review. 8 C.F.R. § 1003.0(a). Until earlier this year, the regulation at issue in this case allowed the Director to appoint temporary Board members. *See* 8 C.F.R. § 1003.1(a)(4) (2022). In practice, however, the Attorney General appointed them himself. Expanding the Size of the Board of Immigration Appeals, 89 Fed. Reg. at 22632. The regulation now reflects that the Attorney General makes the appointments. 8 C.F.R. § 1003.1(a)(4) (2024).

[4] Congress never enacted the Immigration Reform, Accountability and Security Enhancement Act of 2002, which Salomon-Guillen claims matters when considering the validity of Judge Brown's reappointment. As we explain, his argument is wrong.

11

C.

The Attorney General appointed Judge Brown (citing 8 U.S.C. § 1103(g)(1)) for a six-month term and then reappointed her to three more consecutive terms. Salomon-Guillen argues that Judge Brown couldn't continue serving as a temporary Board member after her first six-month term expired. He relies on the version of the temporary Board member regulation in effect when his administrative appeal was decided, which stated that Temporary Appellate Immigration Judges may serve "for terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (2022).

We reject this argument.

1.

To begin, the regulation in force when Salomon-Guillen appealed to the Board didn't apply to the Attorney General.[5] By its express terms, the provision described how the *Executive Office for Immigration Review Director* could appoint temporary Board members. 8 C.F.R. § 1003.1(a)(4) (2022). As three of our sister circuits have held, nothing in the regulation's text limits the Attorney General's independent statutory power to delegate his authority under the immigration laws, as he did when he appointed Judge

---

[5] The government raised this argument for the first time in a Rule 28(j) letter. Although we normally don't consider arguments raised in this posture, we "deviate from this rule in appropriate circumstances." *United States v. Cisson*, 33 F.4th 185, 191 (4th Cir. 2022). We do so here, because (1) the Rule 28(j) letter directed our attention to an opinion issued after the government's brief was filed, (2) the opinion bears directly on the issue before us, (3) Salomon-Guillen responded to the letter and provided his argument on the significance of the case discussed, (4) the factual issues are fully developed, and (5) the legal analysis the letter raises is straightforward. *See United States v. Holness*, 706 F.3d 579, 592–93 (4th Cir. 2013).

12

Brown under 8 U.S.C. § 1103(g). *Bernardo-De La Cruz v. Garland*, 114 F.4th 883, 891–92 (7th Cir. 2024); *Punin v. Garland*, 108 F.4th 114, 128–29 (2d Cir. 2024); *Rivera v. Garland*, 108 F.4th 600, 606 (8th Cir. 2024).

Salomon-Guillen notes that the Attorney General cited § 1103(g)(1) when he appointed Judge Brown. That section grants the Attorney General the powers that "were exercised by the Executive Office for Immigration Review . . . on the day before the effective date of the Immigration Reform, Accountability and Security Enhancement Act of 2002." 8 U.S.C. § 1103(g)(1). Because that act failed to pass, Salomon-Guillen suggests that (g)(1) never took effect.

Even if Salomon-Guillen is right about the validity of § 1103(g)(1) (a question we don't decide here), his argument still fails. Salomon-Guillen ignores that Congress separately gave the Attorney General the power to "delegate . . . authority" that the Attorney General "determines to be necessary for carrying out" his statutory powers. 8 U.S.C. § 1103(g)(2). Salomon-Guillen doesn't challenge the Attorney General's authority over removal cases or the Executive Office for Immigration Review, and we have no trouble concluding that the Attorney General could delegate that authority to Judge Brown under § 1103(g)(2). *Punin*, 108 F.4th at 128–29; *Bernardo-De La Cruz*, 114 F.4th at 892.

2.

We could end our analysis there. But even if we indulged Salomon-Guillen and supposed that the Attorney General was bound by 8 C.F.R. § 1003.1(a)(4), we would reject Salomon-Guillen's interpretation of that regulation.

13

According to Salomon-Guillen, the word "terms" in the regulation is plural because it modifies "temporary Board members," which is itself plural. In his view, we shouldn't infer that temporary Board members' terms are renewable simply based on the use of the plural word "terms." The problem for Salomon-Guillen is that the inference he would have us draw is inconsistent with the broad delegation authority granted to the Attorney General under § 1103(g)(2).

Salomon-Guillen next points to the separate regulation providing for the appointment of temporary immigration judges, which expressly allows such judges to be appointed to "renewable terms not to exceed six months." 8 C.F.R. § 1003.10(e)(1) (2021). The contrast between the two regulations, says Salomon-Guillen, means that the Attorney General's ability to appoint temporary Board members isn't coextensive with his power to appoint temporary immigration judges.

Applying our "standard tools of interpretation," that is, the text, structure, history, and purpose of § 1003.1(a)(4), we do not agree that omission of "renewable" from the temporary Board member provision makes a difference. *Kisor v. Wilkie*, 588 U.S. 558, 573, 575 (2019).

Start with the text. The regulation applicable to Salomon-Guillen's administrative appeal authorized the appointment of "temporary Board members for terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (2022). This language doesn't restrict the power to appoint the same person to multiple consecutive terms. As a sister circuit has aptly noted, "[t]here is no ambiguity in the text of the regulation; it simply does not address the issue of additional terms." *Rivera*, 108 F.4th at 606.

14

The structure, too, runs contrary to Salomon-Guillen's position. Although the regulation permitted temporary Board members to participate in cases warranting three-member panels, the time limit for disposing of such cases was 180 days (about six months), which could be extended. 8 C.F.R. § 1003.1(e)(8)(i)–(ii) (2022). It would make no sense for the regulation to allow temporary Board members to participate in cases assigned to three-member panels but require their service to conclude before those cases might be decided.

Resisting this view, Salomon-Guillen points to the history of the regulations authorizing temporary immigration judges and temporary Board members. But that history supports the government's reading of the regulations.

The temporary Board member provision was enacted first. In its original form, the regulation authorized the appointment of temporary Board members "for whatever time . . . deem[ed] necessary." Executive Office for Immigration Review; Board of Immigration Appeals; Designation of Judges, 53 Fed. Reg. 1,659, 1,660 (May 3, 1988). For reasons not stated in the record, it was later changed to limit temporary Board members' terms to six months. Board of Immigration Appeals: En Banc Procedures, 63 Fed. Reg. at 31890.

Even so, agency practice reveals that the terms of temporary Board members have been routinely renewed beyond the first six-month term. *See, e.g.*, Press Release, Off. of Pub. Affs., Attorney General Holder Appoints New Member to the Board of Immigration Appeals (Aug. 3, 2009), https://www.justice.gov/opa/pr/attorney-general-holder-appoints-new-member-board-immigration-appeals [https://perma.cc/6LMY-ZTJV] (stating that Judge John H. Guendelsberger served as a temporary Board member from May 2007 until

15

July 2009); Press Release, Exec. Off. for Immigr. Rev., EOIR Swears in Eight Immigration Judges (Mar. 16, 2016), https://www.justice.gov/eoir/pr/eoir-swears-eight-immigration-judges [https://perma.cc/HE5S-545N] (stating that Judge Elise Manuel served as a temporary Board member from 2012 until 2016).

The Attorney General promulgated the temporary immigration judge provision at issue in 2014. Designation of Temporary Immigration Judges, 79 Fed. Reg. 39953, 39956 (July 11, 2014). And it's true that the text allows for the appointment of eligible individuals "to act as temporary immigration judges for *renewable* six-month terms." *Id.* at 39,954 (emphasis added). But we reject the notion that by enacting this regulation, the Attorney General intended to undo decades of agency practice as to the appointment of temporary Board members. Indeed, had the Attorney General done so without explanation or justification, his actions would likely have been arbitrary and capricious. *See Bedford Cnty. Mem'l Hosp. v. Health & Hum. Servs.*, 769 F.2d 1017, 1022 (4th Cir. 1985).

In fact, the recent amendment of the temporary Board member provision underscores that the Attorney General always intended for the terms of temporary Board members to be renewable. The amendment's preamble explains that it was the long-held understanding of the agency that temporary Board members' terms were renewable and that the addition of the term "renewable" to the regulation was "in the interest of clarity." Expanding the Size of the Board of Immigration Appeals, 89 Fed. Reg. 22630, 22631 (Apr. 2, 2024). This clarifying amendment only confirms our view of the relevant history.

We conclude that the version of 8 C.F.R. § 1003.1(a)(4) in effect when Salomon-Guillen appealed to the Board didn't apply to the Attorney General or otherwise limit his

16

ability to appoint temporary Board members. And we hold that this regulation authorized Judge Brown's reappointment as a temporary Board member in any event. *See Carreon*, 71 F.4th at 253–54 (rejecting an argument that § 1003.1(a)(4) prevents a temporary Board member from serving multiple terms); *Brito v. Garland*, 40 F.4th 548, 553 (7th Cir. 2022) (same).

It follows that Judge Brown could lawfully participate in the adjudication of Salomon-Guillen's case.[6]

III.

Next, we consider whether we may review the Board's denial of Salomon-Guillen's application for an inadmissibility waiver. We may not.

An otherwise inadmissible alien can obtain a waiver of inadmissibility under 8 U.S.C. § 1182(h). To obtain such a waiver, the applicant must show "to the satisfaction of the Attorney General" that "denial of admission would result in extreme hardship to [his] United States citizen . . . spouse, parent, son, or daughter." 8 U.S.C. § 1182(h)(1)(B).

---

[6] Salomon-Guillen also challenges the policy implications of our conclusion, complaining that authorizing renewable terms "would make [temporary Board] members far more susceptible to political pressures from within the department." Pet'r's Br. at 17. But to the extent that someone might be inclined to curry favor with the Attorney General to secure a temporary Board member appointment, that's as likely to happen before the first appointment as it is during reappointments. In any event, we must look at the regulation's "plain meaning," not matters of policy. *BP P.L.C. v. Mayor of Baltimore*, 593 U.S. 230, 246 (2021).

17

Additionally, the applicant must show that he merits a discretionary waiver. *See Boggala v. Sessions*, 866 F.3d 563, 570 (4th Cir. 2017).

We lack jurisdiction to review "any judgment regarding the granting of relief under [§] 1182(h)." 8 U.S.C. § 1252(a)(2)(B)(i). But we retain jurisdiction to consider "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D).

The Board reviewed the immigration judge's findings de novo and concluded that Salomon-Guillen failed to show "that his waiver of inadmissibility should be granted as a matter of discretion" given the equities of the case. J.A. 7. That conclusion is a discretionary determination over which we lack jurisdiction.

Salomon-Guillen argues that the jurisdictional bar does not matter. He says that the "extreme hardship" requirement is a statutory eligibility requirement that presents a reviewable mixed question of law and fact. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020) ("questions of law" include "mixed questions of law and fact" like whether given facts satisfy a legal standard).

He contends that, if we were to agree with him that he proved extreme hardship, then the satisfaction of the requirement would be a positive equity that the Board would need to consider on remand when choosing to exercise its discretion. He relies on language from a Board opinion suggesting that an extreme hardship finding is a "favorable discretionary factor to be considered" when weighing the merits of an application for an inadmissibility waiver. *Mendez-Moralez*, 21 I. & N. Dec. 296, 301 (B.I.A. 1996) (en banc).

Salomon-Guillen's reliance on *Mendez-Moralez* is misplaced. The language he cites, in context, shows that the Board need not make an extreme hardship finding to deny

18

an inadmissibility waiver application on discretionary grounds. That is, while extreme hardship may be a "favorable" factor, "an application for discretionary relief, including a waiver under [8 U.S.C. § 1182(h)], may be denied in the exercise of discretion without express rulings on the question of statutory eligibility." *Id.*; *see Patel v. Garland*, 596 U.S. 328, 332 (2022) (explaining that an immigration judge "need not address eligibility at all" if he or she would still deny a request for relief as a matter of discretion).

Salomon-Guillen would have us direct the Board to make an express ruling on extreme hardship in every case, since failing to do so could impact the equities of a discretionary denial. This reading of *Mendez-Moralez* proves too much and renders hollow the decision's own holding that express findings on extreme hardship are not necessary. *See Henry v. Mukasey*, 264 F. App'x 62, 64 (2d Cir. 2008) (rejecting the argument that the Board was "required to determine whether . . . removal would create an extreme hardship . . . in order to weigh all the relevant equities").

Whether assessing extreme hardship or weighing the equities of removal to make a discretionary decision, the Board considers the same record. In this light, the only reason that an express extreme hardship finding could matter as to the discretionary analysis is that it bears the label "extreme." At bottom, then, Salomon-Guillen's argument goes to the weight that the Board gave to his evidence, which "presents a garden-variety abuse of discretion argument . . . that does not amount to a legal question." *Cobos-Gonzales v. U.S. Att'y Gen.*, 542 F. App'x 772, 774–75 (11th Cir. 2013).

Salomon-Guillen hasn't raised a "constitutional claim[] or question[] of law." 8 U.S.C. § 1252(a)(2)(D). He directly challenges the Board's discretionary decision not to

19

grant him an inadmissibility waiver based on the equities of his case.  Because the Board denied Salomon-Guillen's application as a "matter of grace," we have no power to review that decision.  *Patel*, 596 U.S. at 332; *see Wilkinson v. Garland*, 601 U.S. 209, 225 n.4 (2024) (explaining that, since cancellation of removal is discretionary, an immigration judge's ultimate decision on cancellation "is not reviewable as a question of law").

IV.

For these reasons, we deny the petition for review as to Salomon-Guillen's challenge to the procedural validity of the Board's action and dismiss the rest of the petition.

*PETITION DENIED IN PART*
*AND DISMISSED IN PART*