**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1379**

———————

EUGENIA BAUTISTA CHAVEZ,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

------------------------------

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, d/b/a Amica Center for Immigrant Rights,

Amicus Supporting Petitioner.

———————

**No. 23-2059**

———————

EUGENIA BAUTISTA CHAVEZ,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

------------------------------

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, d/b/a Amica Center for Immigrant Rights,

Amicus Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  October 31, 2024                         Decided:  April 10, 2025

Before DIAZ, Chief Judge, and RICHARDSON and HEYTENS, Circuit Judges.

Petition denied by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Richardson and Judge Heytens joined.

**ARGUED:**  Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Rodolfo David Saenz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian Boynton, Principal Deputy Assistant Attorney General, Lindsay B. Glauner, Senior Litigation Counsel, Rebekah Nahas, Senior Litigation Counsel, Criminal Immigration Team, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  F. Evan Benz, Kendra Blandon, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Amicus Curiae.

2

DIAZ, Chief Judge:

Eugenia Bautista Chavez, a native and citizen of Mexico, challenges the Board of Immigration Appeals' order of removal based on her 2011 conviction for petit larceny under section 18.2-96 of the Virginia Code. The Board held—as had the Immigration Judge—that petit larceny categorically qualified as a crime involving moral turpitude, rendering Chavez ineligible for cancellation of removal.

On appeal, Chavez argues that a defendant in Virginia can be convicted of larceny (of any kind) for taking property that he or she sincerely but unreasonably believes was abandoned, which falls short of the requisite mental state for a crime involving moral turpitude. That same defendant, says Chavez, can be convicted of petit larceny for taking property of *de minimis* value (i.e., property worth less than a penny), which (in her view) isn't sufficiently reprehensible conduct to make out a crime involving moral turpitude.

These are issues of first impression for our court, and they reach us amid a sea change in administrative law after the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). But we nonetheless find solid ground to deny Chavez's application for cancellation of removal and her motion to reconsider that decision.

I.

A.

Chavez entered the United States without inspection in 2000 and has lived here since with her three children. In 2011, she was convicted of Virginia petit larceny. The

3

Department of Homeland Security then began removal proceedings against Chavez based on the larceny conviction. Chavez conceded that she was removable. But she requested cancellation of removal based on the hardship that her removal would cause her children.

The Department moved to pretermit Chavez's application for cancellation of removal, arguing that she was ineligible for that relief because petit larceny under Va. Code § 18.2-96 is categorically a crime involving moral turpitude.

The Immigration Judge ruled for the government. The judge reasoned that he was "required" to find that petit larceny was a crime involving moral turpitude under our decision in *Hernandez v. Holder*, 783 F.3d 189 (4th Cir. 2015).[1] J.A. 117–18. *See supra* n.1. As a result, Chavez couldn't "qualify for cancellation of removal." J.A. 118.[2]

---

[1] On that point, the Immigration Judge erred. In *Hernandez*, the petitioner conceded that Virginia petit larceny was a crime involving moral turpitude. 793 F.3d at 191. We therefore never answered the question Chavez now presents.

[2] The Immigration Judge also found that Chavez wouldn't be eligible for cancellation of removal even if her conviction qualified for the petty offense exception in 8 U.S.C. § 1182(a)(2)(A)(ii)(II), again relying on our *Hernandez* decision. *See* J.A. 111–12 (citing *Hernandez*, 783 F.3d at 189). Under the petty offense exception, "a conviction for a crime involving moral turpitude does not render [a person] inadmissible if (1) the [person] has been convicted of a single crime; (2) the maximum penalty for the crime committed 'does not exceed imprisonment for one year;' and (3) the [person]'is not sentenced to a term of imprisonment in excess of 6 months.'" *Hernandez*, 783 F.3d at 193 (cleaned up). While Chavez argues that her criminal conviction "was not one for which 'a sentence of one year or longer may be imposed,'" she concedes that she "did not make this argument before the [Board] or in her opening brief." Reply Br. at 26. So we decline to consider it on appeal.

4

B.

Chavez appealed to the Board. She argued that Virginia petit larceny didn't require a culpable mental state because a defendant could commit larceny negligently, or by taking property that she sincerely, but unreasonably, believed was abandoned. Chavez pointed to Virginia's so-called claim-of-right affirmative defense, which can negate a defendant's intent to steal. And she correctly contended that *Hernandez* wasn't controlling because the petitioner there conceded that Virginia petit larceny was a crime involving moral turpitude.

Chavez also argued that Virginia's petit larceny statute doesn't require reprehensible conduct because it doesn't set a minimum value for the stolen property, meaning that a defendant may be convicted for stealing property worth less than a penny.

The Board dismissed Chavez's appeal. Though the Board agreed with the Immigration Judge's conclusion that Virginia petit larceny is a crime involving moral turpitude, it didn't adopt the judge's reasoning. Instead, it concluded that the offense required a culpable mental state because "[t]he availability of an affirmative defense based on 'reasonable' belief in abandonment simply acknowledges that the defendant lacked the requisite intent to permanently deprive the 'owner' of the goods—because the defendant reasonably believed that the goods had no owner." J.A. 42–43.

The Board likewise found that Virginia petit larceny required reprehensible conduct because the offense "requires [the] taking to be of an item of some 'intrinsic' value," so "[o]nly money, goods, and chattels can be the subject of larceny." J.A. 43.

5

Chavez then moved the Board to reconsider its decision, asking specifically that it reconsider whether petit larceny is a crime involving moral turpitude. A temporary Board member denied Chavez's motion.

This petition for review followed.

## II.

Chavez contends that petit larceny under section 18.2-96 isn't a crime involving moral turpitude because it doesn't require a sufficiently culpable mental state and doesn't involve reprehensible conduct. She also argues that the temporary Board member had no authority to decide her reconsideration motion.

We disagree, and so deny her petition.

## A.

We first consider Chavez's argument that petit larceny isn't a crime involving moral turpitude. That's "a question of law that we review de novo." *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014).

Before the Supreme Court overruled the *Chevron* doctrine in *Loper Bright*, we deferred to the Board's reasonable interpretation of the (admittedly ambiguous) term "crime involving moral turpitude," as well as to the Board's view on the "type of conduct [that] involves moral turpitude." *Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012). *Loper Bright* largely unwound that deference, instructing that courts—and not agencies, such as the Board—resolve statutory ambiguities "by exercising independent legal judgment." 603 U.S. at 401.

6

But although the Supreme Court declared "legal interpretation" "the province and duty of the judicial department," it didn't "call into question prior cases that relied on the *Chevron* framework." *Id.* at 412 (internal quotations omitted). Those holdings, the Court explained, "are still subject to statutory *stare decisis* despite our change in interpretative methodology." *Id.*

In other words, *Loper Bright* doesn't wipe away the results of our prior decisions deferring to the Board's reasonable interpretations of what constitutes a crime involving moral turpitude. But it does mean that any Board guidance serves only as persuasive authority. *See Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) ("[W]e may look to agency interpretations for guidance, but do not defer to the agency [after *Loper-Bright*].").

Fortunately, "[t]he question of whether a crime involves moral turpitude is not new, either to the [Board] or to our court." *Ortega-Cordova v. Garland*, 107 F.4th 407, 411 (4th Cir. 2024). In answering that question for state offenses, we "apply the categorical approach, which looks to the elements of the crime rather than the particular conduct underlying the conviction." *Granados v. Garland*, 17 F.4th 475, 481 (4th Cir. 2021) (cleaned up). Only if "all permutations" of the alleged conduct involve moral turpitude will we find that the offense categorically qualifies. *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018).

Under this categorical framework, a crime involving moral turpitude "must involve conduct that not only violates a statute but also independently violates a moral norm." *Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017) (cleaned up). "That is to say, to

7

involve moral turpitude, a crime requires two essential elements: a culpable mental state and reprehensible conduct." *Id.* at 736 (cleaned up).

We turn to those elements now.

1.

Chavez maintains that Virginia's claim-of-right defense means that petit larceny doesn't require a sufficiently culpable mental state to qualify as a crime involving moral turpitude.[3] She argues—correctly—that "[t]o satisfy [the mental state] requirement, 'the crime must have, as an element, an intent to achieve an immoral result.'" Pet'r's Br. at 19 (quoting *Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018)). So "[c]riminally negligent conduct" will not do. *Sotnikau*, 846 F.3d at 736; *see also Nunez-Vasquez v. Barr*, 965 F.3d 272, 283 (4th Cir. 2020).

According to Chavez, a defendant can be convicted of larceny in Virginia for negligent conduct because she can raise the claim-of-right defense only if she mistakenly, but *reasonably*, believed that the stolen property had been abandoned. By contrast, the defense would fail if she mistakenly, but *unreasonably*, believed that the stolen property had been abandoned. It's this latter conduct—purportedly falling beyond the claim-of-right defense—that Chavez claims is categorically negligent but still a ground to secure a larceny conviction under Virginia law.

---

[3] The government counters that we've "already recognized that 'affirmative defenses are not considered under the categorical approach.'" Resp't's Br. at 34 (quoting *Granados*, 17 F.4th at 483). That's wrong. We can consider affirmative defenses that negate an element of the crime because the government retains the burden of proof to show such defenses don't apply. *See Smith v. United States*, 568 U.S. 106, 110 (2013).

There's much to unpack in Chavez's argument, so we'll begin with the Virginia statute and, by extension, Virginia common law.

2.

At the time of Chavez's conviction, Va. Code. § 18.2-96(2) provided that any person who "[c]ommits simple larceny not from the person of another of goods and chattels of value of less than $200 . . . shall be deemed guilty of petit larceny."[4]  The statute, however, doesn't define the crime of "larceny."  Instead, Virginia courts rely on the crime's common-law definition.  *See Carter v. Commonwealth*, 694 S.E.2d 590, 593 (Va. 2010) ("In Virginia, larceny is a common law crime.").

Virginia's common law, in turn, defines larceny as "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and *with the intention to deprive the owner thereof permanently*."  *Welch v. Commonwealth*, 896 S.E.2d 867, 870 (Va. Ct. App. 2024) (emphasis added) (quoting *Brown v. Commonwealth*, 826 S.E.2d 883, 887 (Va. 2019).  And Virginia courts recognize that larceny requires a specific intent.  *See e.g.*, *Saunders v. Commonwealth*, 447 S.E.2d 526, 528 (Va. Ct. App. 1994).

There are several consequences to larceny's status as a specific-intent crime.  The first is the state's burden of proof.  "It is elementary that where . . . the statute makes an offense consist of an act combined with a particular intent, proof of such intent is as necessary as proof of the act itself and must be established as a matter of fact."  *Ridley v.*

---

[4] Subsequent amendments have raised the dollar figure to $1000.

9

*Commonwealth*, 252 S.E.2d 313, 314 (Va. 1979).  Naturally then, if the state fails to prove intent to permanently deprive, the defendant can't be convicted of larceny.  *Welch*, 896 S.E.2d at 871.  Given this, "[t]here can be no larceny if an accused, in good faith, believes that the property taken belongs to him, since the essential element of intent is absent in that circumstance." *Stanley v. Webber*, 531 S.E.2d 311, 315 (Va. 2000).

Enter the claim-of-right defense, which turns on whether the accused took the property "under a *bona fide* claim of right." *Butts v. Commonwealth*, 133 S.E. 764, 768 (Va. 1926).  Under that defense,[5] "a defendant charged with larceny may assert an 'honest belief' that the property she is charged with stealing was abandoned, so long as the evidence establishes a reasonable basis for her to have such a belief." *Welch*, 896 S.E.2d at 870.  This "mistaken belief must be sincere, and not a dishonest pretense." *Id.* at 870–71 (cleaned up).

Chavez latches onto the "reasonable basis" language to argue that Virginia will convict a defendant who honestly but *unreasonably* believed the taken property was abandoned.  Chavez directs us to four cases for that proposition (which we'll address in due course), and she asserts that other states in which larceny is a common-law crime, by contrast, "adhere[] to 'the long-established principle that an honest belief need not be

---

[5] Virginia has often referred to the claim-of-right defense as a "case-in-chief defense" under which the prosecution retains the burden to "prove some essential element of the charged offense." *Calokoh v. Commonwealth*, 883 S.E.2d 674, 681 (Va. Ct. App. 2023) (cleaned up).

10

objectively reasonable to negate the specific intent required for larceny.'"   Pet'r's Br. at 22 (quoting *Commonwealth v. Liebenow* (*Liebenow II*), 20 N.E.3d 242, 250 (Mass. 2014)).

We'll take a closer look at *Liebenow* because its procedural history in arriving at that principle is instructive.

3.

In *Liebenow*, the defendant took pieces of metal from a construction site, even though the pieces were on private property with several "no trespassing" signs. *Commonwealth v. Liebenow* (*Liebenow I*), 997 N.E.2d 109, 111 (Mass. App. Ct. 2013), *vacated*, 20 N.E.3d 242 (Mass. 2014).   The defendant was charged with larceny under $250.  At a bench trial, he "claimed as an affirmative defense that he lacked the requisite specific intent to steal because he honestly believed that the metal property was abandoned." *Id.* at 110.

The trial judge found the defendant guilty, commenting that "[a]s far as [he was] concerned, the presence of the no trespassing signs puts you on notice that the property was not for you to take. *Your honest belief at that point would not be relevant*." *Id.* at 111 (emphasis added).

On appeal, the question was whether the trial court erred in ignoring the defendant's professed honest (though mistaken) belief that the property was abandoned because that belief wasn't objectively reasonable.  A divided panel of the Massachusetts Appeals Court affirmed the conviction by recognizing (erroneously, it seems) that Massachusetts had long imposed a "dual requirement of subjective honesty *and* objective reasonableness" for a defendant to assert an abandonment affirmative defense. *Id.* at 113 (emphasis added).

11

The dissent disagreed, opining that the dual requirement in the trial court's explanation of its guilty verdict and in the majority's view "rest[ed] on a contrary view of the law." *Id.* at 117 (Milkey, J., dissenting). Instead, Judge Milkey reasoned that "one cannot consciously intend to steal property that he honestly believed he had a legal right to take," so "[a]llowing a larceny conviction even where the defendant honestly believed that the property had been abandoned would be tantamount to substituting mere negligence for specific intent." *Id.* at 122–23; *see also id.* at 124 ("[T]here is no such thing in the common law as larceny by negligence." (cleaned up)).

Because larceny is a specific intent crime, Judge Milkey insisted that "where a defendant puts at issue his belief that the property he took had been abandoned," "the [state] must prove that the defendant 'knew that he had no right to the property taken,'" and "not merely that a reasonable person in the defendant's position would have known." *Id.* at 125 (cleaned up).

Judge Milkey emphasized that he was not "suggest[ing] that the objective unreasonableness of a defendant's professed belief would be beside the point." *Id.* Rather, "a fact finder would remain free to consider the reasonableness of a defendant's claims, and indicia of unreasonableness might well provide convincing evidence that a defendant's professed belief was not in fact honestly held." *Id.*

The Massachusetts Supreme Judicial Court granted the defendant's petition for further appellate review in *Liebenow II*—the decision that Chavez cites. There, the court largely adopted Judge Milkey's position, holding that the trial court erred by "view[ing] the [abandonment] affirmative defense as requiring proof that the defendant's belief was

12

objectively reasonable." *Liebenow II*, 20 N.E.2d at 244. Instead, said the court, a jury must acquit a defendant of larceny if it finds "that a defendant held an honest, albeit mistaken, belief that he was entitled to the property he took." *Id.* at 248.

The court noted, as had Judge Milkey, that "[e]vidence of reasonableness may, however, be considered by the jury to assist in their determination whether to credit a defendant's honest belief." *Id.* at 250. After all, "[n]either juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings." *Id.* at 250–51 (cleaned up).

With this guidance in mind, we return to Virginia.

4.

Chavez cites four Virginia decisions that she says show that the Commonwealth has adopted a dual requirement that a defendant's good-faith belief in her claim of right to property must also be objectively reasonable. Two of those cases are unpublished and, along with a third, involve challenges to a trial court's refusal to grant a jury instruction on the claim-of-right defense. The fourth arises from a bench trial (like *Liebenow*) and is the most recent published case on the defense. We'll begin and end there, and because the Supreme Court of Virginia hasn't weighed in on this specific claim-of-right issue, we predict how it would rule. *See Sines v. Hill*, 106 F.4th 341, 351 (4th Cir. 2024).

In *Welch v. Commonwealth*, the Virginia Court of Appeals considered whether the trial court erred in finding Welch guilty of petit larceny after she took a computer tablet

13

from a convenience store. 896 S.E.2d at 869–70.[6] Raising the claim-of-right defense, Welch argued that she thought the tablet was lost or abandoned so "she lacked the requisite intent for a [larceny] conviction." *Id.* at 869. But the evidence also showed that Welch had "concealed the device underneath a layer of napkins" as she left the store. *Id.* at 871.

The trial court rejected Welch's claim-of-right argument, noting that under its "understanding of the law," the abandonment defense required two things: that "the defendant [had] a subjectively honest belief," and that there was "an objectively reasonable belief that the item was, in fact, abandoned." Transcript of Bench Trial at 41–42, *Commonwealth v. Welch*, No. CR21000316 (Va. Cir. Ct. Sept. 27, 2022) ("*Welch* Trial Transcript"). The court concluded that Welch "failed to establish an honest, good faith belief that the property was lost or abandoned," or a "reasonable basis that would support such a belief." 896 S.E.2d at 871.

The trial court doubted that Welch "had an honest belief that the item was, in fact, abandoned." *Welch* Trial Transcript at 42. It concluded that such a belief wasn't "even subjectively reasonable," *id.*, so it found Welch "guilty of petit larceny," *id.* at 43.

On appeal, the *Welch* court recounted the basics of the claim-of-right defense in Virginia: that it "requires a predicate showing of good faith, [or] a *bona fide* belief by the

---

[6] The *Welch* court mentioned the three other cases that Chavez cites. *Id.* at 871 n.2 (citing *Habahbih v. Commonwealth*, No. 1289-12-4, 2013 WL 3833259, at *2 (Va. Ct. App. July 23, 2013), *Hinnant v. Commonwealth*, No. 0909-95-4, 1996 WL 227508, at *3 (Va. Ct. App. May 7, 1996), and *Northcraft v. Commonwealth*, 892 S.E.2d 351 (Va. Ct. App. 2023)). All three involved a challenge to a trial court's refusal to grant a jury instruction on the claim-of-right defense. And none move the needle in the direction that Chavez wants us to go.

taking party that she has some legal right to the property taken." 896 S.E.2d at 871 (cleaned up). To be "good faith" or "bona fide," a belief must be "honest" and based on "evidence [that] establishes a reasonable basis . . . to have such a belief." *Id.* at 870 (cleaned up). By that, the court explained that "[t]he mistaken belief must be 'sincere,' and not a dishonest pretense," or "imaginary." *Id.* at 870–71 (cleaned up). "Whether asserted in good faith or as a 'mere pretext,' a claim-of-right defense relies heavily on factfinding." *Id.* at 871 (cleaned up).

The court of appeals concluded that "[t]he facts in this case . . . do not support Welch's argument that she had a good faith belief that the tablet was abandoned." *Id.* But it did so with a careful eye towards "Welch's intent to steal," rather than by imposing an additional objective reasonableness requirement. *Id.*

To be sure, the court cited "Welch's concealment of the tablet" as a fact supporting "her lack of a reasonable basis to believe the device was abandoned." *Id.* But it emphasized that "the *critical finding* under our case law is whether the taking party had a *good faith belief* that she had some legal right to take the property.'" *Id.* at 872 n.3 (cleaned up) (emphases added).

### 5.

Chavez asserts that the "reasonable basis" language found in Virginia cases means that "Virginia courts only permit defendants to raise a claim-of-right defense when they had an objectively *reasonable* belief that they had a right to take the property in question." Pet'r's Br. at 26. The government counters that Virginia courts use the "reasonable basis" language as a threshold determination as to "whether there is sufficient evidence to allow

15

an instruction on abandonment to go to the jury." Resp't's Br. at 38 (quoting *Welch*, 896 S.E.2d at 871 n.3).

We think the government has the better of the arguments.

Agreeing with Chavez would improperly transform a recognized specific intent crime into one that could be committed negligently. Applying a coextensive subjective and objective inquiry, as Chavez would have us do, would cut against the published authority from Virginia's courts, which have reliably embraced a subjective standard. And doing so would conflate a threshold finding for a jury instruction with the elements required for a conviction.[7]

Take *Welch*. Had the Virginia Court of Appeals intended to impose an objective and subjective standard for the claim-of-right defense—or if it thought Virginia law imposed such a standard—then it could have done so, just as the *Liebenow I* court did. Instead, the *Welch* court emphasized that the claim-of-right defense's center of gravity and its "critical finding" is "whether the taking party had a *good faith belief* that she had some legal right to take the property." 896 S.E.2d at 872 n.3 (cleaned up). And the court affirmed because the trial court made this "critical finding" that "Welch lacked a 'good faith belief' that the tablet was abandoned." *Id.* at 873.

---

[7] Virginia's model jury instruction on the claim-of-right defense doesn't impose an objective standard or require a showing of objective reasonableness. 1 Va. Model Jury Instrs., Crim. Instr. No. 52.200 (2024) (instructing that a defendant must be found not guilty if he took the property "under a belief that he had a good faith claim of right" to take it "even though his belief was mistaken").

16

At bottom, the inquiry is a subjective one,[8] even if the trial court may look to the *reasonableness* of a defendant's subjective belief to gauge whether that belief was honestly held. *See id.* at 871.

6.

Chavez next directs us to cases addressing general intent crimes that she says also show that larceny in Virginia can be committed negligently. For example, she cites *United States v. Martin*, 753 F.3d 485 (4th Cir. 2014), where we held that subsection (a) of Maryland's fourth-degree burglary statute—which is violated when a person "break[s] and enter[s] the dwelling of another," *id.* at 488 (quoting Md. Code Ann., Crim. Law § 6-0295(a))—doesn't qualify as a "crime of violence" because a "conviction under [the statute] may be based on negligent rather than intentional conduct." *Id.* at 493.

We premised that holding in part on Maryland's defense to the burglary statute, which requires that the perpetrator "reasonably believe[] that the owner of the premises

---

[8] In a case that Chavez cites only glancingly, the Supreme Court of Virginia affirmed a lower court's refusal to instruct the jury on the claim-of-right defense even though the defendant "may have subjectively believed" that the money he recovered had first been stolen from him. *Pena Pinedo v. Commonwealth*, 860 S.E.2d 53, 57 (Va. 2021). The high court did so because "the stolen money was itself a derivative form of contraband" from a drug sale, so, as a matter of law and policy, "[t]he record [did] not contain more than a scintilla of evidence to establish that [the defendant] had a *good faith* or *bona fide* claim of right to the stolen money." *Id.* (emphasis added).

Rather than articulating a new standard for the claim-of-right defense, it appears the Supreme Court carved out a narrow (and potentially one-off) exception to the defense under which "an individual cannot have a good faith or bona fide claim of right regarding contraband, money earned from the sale of contraband, or other 'fruits of a crime.'" *Id.* (cleaned up).

17

would have licensed him to enter." *Id.* (quotation omitted). But we explained that "[b]ecause the defense requires a *reasonable* belief of permission to enter the dwelling, a defendant who *un*reasonably believed that he had permission to enter would be guilty under [the statute]." *Id.*

Chavez faces two problems. The first is that, unlike Virginia larceny, Maryland fourth-degree burglary—at least in subsection (a)—isn't a specific intent crime. Instead, it turns on a defendant's "general criminal intent to break and enter the dwelling." *Id.* (cleaned up).[9] And it's "clear" that a defendant may commit fourth-degree burglary negligently because Maryland courts have held that the statute "includes within its scope a variety of acts, including some that are reckless *or negligent*." *Id.* at 493–94 (emphasis added) (quoting *Bane v. State*, 533 A.2d 309, 317 (Md. Ct. Spec. App. 1987)).

Put differently, Maryland courts have done for fourth-degree burglary what Virginia courts have never done for larceny: recognized that a conviction "may be based on negligent rather than intentional conduct." *Id.* at 493. Chavez identifies no case in which a Virginia court has held or hinted that a larceny conviction can rest on anything less than a defendant's intent to permanently deprive an owner of her property.

Chavez's second problem is that Maryland's burglary defense distinguishes only between a reasonable and an unreasonable belief, with no inquiry into whether those beliefs

---

[9] Other subsections in Maryland's fourth-degree burglary statute appear to encompass specific intent crimes. *See id.* at 488 (describing that subsection (b) criminalizes "being in a dwelling or storehouse of another . . . with the intent to commit theft," and that subsection (d) criminalizes "possessing burglar's tools with intent to use").

18

are honestly held. As we've discussed, a Virginia fact finder may consider the reasonableness of a defendant's belief as evidence of whether that belief is honestly held without transforming a specific intent crime into a criminally negligent one.

But Maryland would have no need to make such a distinction because a fourth-degree burglary conviction doesn't depend on evidence of the defendant's intent. "All that must be shown is that the perpetrator broke and entered a dwelling place of another." *Bane*, 533 A.2d at 317. By extension then, the relevant question in applying the defense is simply whether the perpetrator's belief upon entering the premises was reasonable.

So *Martin*'s holding carries little water, as does Chavez's citation to *Nunez-Vasquez v. Barr*. There, we held that the defendant's conviction for leaving the scene of an accident wasn't a crime involving moral turpitude because a defendant could be convicted where she "should have known that the property was damaged by the accident." 965 F.3d at 283 (quoting *Clarke v. Galdamez*, 789 S.E.2d 106, 109–10 (Va. 2016)). This "knew or should have known standard" "suggest[ed] that a conviction under this statute would be possible because of a defendant's criminal negligence." *Id.*

But once more, the statute underlying Nunez-Vasquez's conviction doesn't "require any showing of intent, nor has the Virginia Supreme Court read an element of intent into the statute." *Id.* at 282. Thus, we explained that the statute "cannot have the required culpable mental state to qualify as a [crime involving moral turpitude]." *Id.*

The circumstances here are different: larceny in Virginia *does* require that the state prove a defendant's intent to permanently deprive the owner of her property, whether the defendant successfully raises the claim-of-right defense or not. Thus, if anything, *Nunez-*

19

*Vasquez* supports that larceny's intent element satisfies the culpable mental state required to qualify as a crime involving moral turpitude.

### 7.

To sum up, Virginia has long held that "there can be no larceny of the property taken if it, in fact, is the property of the taker, or if he, in good faith, believes it is his, for there is lacking the criminal intent which is an essential element of larceny." *Pena Pinedo v. Commonwealth*, 860 S.E.2d 53, 56 (Va. 2021) (quoting *Butts*, 133 S.E. 764). None of the cases Chavez cites change that larceny requires an intent to permanently deprive and that this criminal intent may be negated by a good faith claim of right.

While it's true that a fact finder in Virginia need not unreservedly accept that a defendant's subjective belief is held in good faith, it's another long-held principle that a subjective belief "must be sincere and not merely a dishonest pretext." *Id.* And Virginia courts may ensure that a defendant's subjective belief meets this threshold showing without transforming larceny from a specific intent crime or into a criminally negligent one.

### B.

Our job isn't quite done. Next, we turn to Chavez's argument that petit larceny doesn't require reprehensible conduct. Conduct is reprehensible if it "independently violates a moral norm and shock[s] the public conscience as being inherently base, vile, or depraved." *Granados*, 17 F.4th at 484 (cleaned up).

Chavez contends that petit larceny doesn't meet this test for two reasons. First, she argues that the Board's position that "petit larceny is reprehensible is inconsistent with [Board] precedent" governing related crimes. Pet'r's Br. at 30. Second, Chavez asserts

20

that "Virginia petit larceny prohibits the taking of property of de minimis value—including property worth less than a penny, . . . and society does not regard as reprehensible the stealing of property worth a fraction of a cent." *Id.* at 31 (cleaned up).

In both instances, Chavez asks that we define a larceny crime's moral turpitude based on the monetary value of the item taken rather than on the act of taking. We decline to do so.

### 1.

To begin, we note that petty theft offenses—like petit larceny—have consistently been recognized as crimes involving moral turpitude. For more than eighty years, the Board has held that theft offenses constitute a crime involving moral turpitude if the taking includes an intent to permanently deprive. *See, e.g.*, *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, 849 (B.I.A 2016); *Matter of Serna*, 20 I. & N. Dec. 579, 582 (B.I.A 1992); *Matter of Scarpulla*, 15 I. & N. Dec. 139, 140–41 (B.I.A 1974); *Matter of D-*, 1 I. & N. Dec. 143, 145–46 (B.I.A 1941).

And federal courts (including this one) have either found or assumed the same for petit larceny. *See e.g.*, *Lopez*, 116 F.4th at 1038; *Ferreiras Veloz v. Garland*, 26 F.4th 129, 131–32 (2d Cir. 2022); *Granados*, 17 F.4th at 478 (assuming petit larceny categorically involves moral turpitude); *Ramirez*, 887 F.3d at 699 (same); *Hernandez*, 783 F.3d at 191 (same). What's more, Virginia's high court has counted petit larceny as a crime involving moral turpitude for purposes of impeaching a witness, opining that "larceny, either grand

21

or petit, is shot through with moral turpitude." *Bell v. Commonwealth*, 189 S.E. 441, 443–44 (Va. 1937).[10]

After *Loper Bright*, we no longer defer to the Board's reasonable interpretations in this uninterrupted line of precedent. But we use them as a guide as we turn to Chavez's arguments. *See Lopez*, 116 F.4th at 1036; *see also Loper Bright*, 603 U.S. at 402.

2.

Chavez contends that the Board's cases on larceny crimes are logically inconsistent because they don't distinguish grand and petit larceny (or substantial and *de minimis* takings) "from a monetary standpoint." Pet'r's Br. at 32. Yet, says Chavez, for other theft crimes, the Board does "distinguish between substantial and de minimis takings from a *temporal* standpoint," holding that only permanent takings are crimes involving moral turpitude. *Id.* Chavez's description of the cases is correct, but her argument based on them isn't persuasive.

In this case, the Board relied on its precedent in *Diaz-Lizarraga* to find that "a theft offense is categorically a crime involving moral turpitude 'if it involves a taking or exercise of control over another's property without consent and with an intent to deprive the owner of his property . . . permanently.'" J.A. 42 (citing *Diaz-Lizarraga*, 26 I. & N. Dec. at 853).

---

[10] The *Bell* court defined a crime involving moral turpitude as "an infamous crime[,] . . . which works infamy in the person who commits it." 189 S.E. at 444 (quotation omitted). In a later decision applying *Bell*, a Virginia appeals court defined "'moral turpitude' as 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man, or to society in general." *Chrisman v. Commonwealth*, 348 S.E.2d 399, 404 (Va. Ct. App. 1986) (cleaned up).

Even "[i]n the absence of *Chevron* deference," *Ramirez*, 887 F.3d at 703, because *Diaz-Lizarraga* is precedential, we may give the Board's interpretation "due respect" where appropriate, *Lopez*, 116 F.4th at 1039 (affording "due respect" to *Diaz-Lizarraga* under *Skidmore v. Swift & Co.*, 323 U.S. 132 (1944)). "[T]he weight given to a [Board] decision hinges on the thoroughness evident in the [Board's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Ramirez*, 887 F.3d at 703 (cleaned up).

Like our Ninth Circuit colleagues, we think the Board's interpretation in *Diaz-Lizarraga* on the moral turpitude of theft "is entitled to respect." *Lopez*, 116 F.4th at 1038.

As the *Lopez* court explained, in *Diaz-Lizarraga*, the Board, in interpreting a shoplifting offense, issued a "thorough and well-reasoned" decision that is "consistent with judicial precedent." *Id.* at 1040. The Board reviewed developments in state criminal law in all fifty states as well as "the 'mainstream, contemporary understanding of theft' reflected in the Model Penal Code." *Id.* (cleaned up). In doing so, the Board reaffirmed the long-accepted principle "that a theft offense categorically involves moral turpitude if . . . it is committed with the intent to permanently deprive an owner of property." *Diaz-Lizarraga*, 26 I. & N. Dec. at 849.

Chavez complains that the Board distinguishes between substantial (or permanent) takings and *de minimis* (or temporary) ones yet doesn't do the same based on the value of the property taken. But that would require courts to draw an artificial line on what monetary amount is enough to trigger a finding of moral turpitude despite precedent holding that "a taking or exercise of control over another's property *without consent* is

23

itself a potentially reprehensible act that is inherently base and contrary to the moral duties owed between persons and to society in general." *Id.* at 852–53.

We find no support for such line drawing, especially because neither the Board nor federal courts have held that the value of the property taken is relevant when assessing reprehensibility. *See, e.g.*, *Matter of Grazley*, 14 I. & N. Dec. 330, 333 (B.I.A. 1973) ("The fact that the theft may have been petty is immaterial to the question of whether or not it involved moral turpitude."); *Soetarto v. INS*, 516 F.2d 778, 780 (7th Cir. 1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen."). The Supreme Court in *Loper Bright* may have instructed us to review agency interpretation with a keener eye, but it didn't write off respect for settled, consistent, and persuasive precedents.

We also don't find it material that the Board may treat larceny crimes differently from other theft crimes like joyriding or destruction of property. Even assuming that to be true, the Board and federal courts can address these crimes again after *Loper Bright* without having them control the outcome here.

In sum, while "determining whether a particular crime is . . . a 'crime involving moral turpitude' is not an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 378 (2010) (Alito, J., concurring), we're satisfied, based on precedent from the Board as well as federal and Virginia courts, that larceny crimes constitute reprehensible conduct regardless of the value of the property taken.

3.

Chavez next argues that society no longer views petit larceny as reprehensible, and that cases holding otherwise are based on outdated norms. To illustrate these evolved societal values, Chavez provides several hypotheticals and actual examples involving "tolerate[d]" *de minimis* takings (including from an episode of "The Simpsons"), Pet'r's Br. at 42 & n.8. And an amicus brief cites public surveys, ballot initiatives, and specific prosecutions as evidence that petit larceny is often driven by poverty, mental illness, or addiction rather than any evil intent, *see* Brief of Capital Area Immigrants' Rights Coalition as *Amicus Curiae* in Support of Petitioner, *Chavez v. Bondi*, No. 23-1379, at 7–23.

But the categorical approach requires us to look at a crime's elements, not at "the potential justifications for engaging in prohibited conduct." *Ortega-Cordova*, 107 F.4th at 413. Moreover, these stray examples and even Chavez's "argument[s] based on the robust debate about the *decriminalization* of [petit larceny] do[] not indicate that the broad societal consensus as to the *immorality* of [petit larceny] has been materially eroded." *Id.*

As the Supreme Court reminded us in *Loper Bright*, our "special competence [is] in resolving statutory ambiguities" by "exercising [our] independent legal judgment." 603 U.S. at 400–01. Although parsing through moral standards today may be relevant in understanding what constitutes a morally-turpitudinous crime, *see Ortega-Cordova*, 107 F.4th at 412–13, our fidelity is to the law as it exists. To recognize and give credit to such an alleged normative shift in how society now views *de minimis* takings, we would need clearer and more objective evidence than this record presents.

25

Accordingly, we agree with the Board that Chavez's prior conviction for petit larceny in violation of Va. Code § 18.2-96 was for a crime involving moral turpitude.

C.

Finally, Chavez contends that the Board erred in denying her reconsideration motion because the temporary board member who decided the motion remained in office beyond the six-month term he could serve under federal regulations.[11]  We dispose of that challenge quickly.

In *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), we addressed—and rejected—a nearly identical argument against the same federal regulation.  *Id.* at 714.  In so doing, we upheld the validity of consecutive appointments of temporary Board members by the Attorney General.  *Id.* at 719.  That holding forecloses Chavez's challenge and precludes remand.

*PETITION DENIED*

---

[11] The federal regulation Chavez challenges has "been amended to (1) clarify that the Attorney General appoints temporary Board members, and (2) reflect that such members are appointed for *renewable* terms not to exceed six months." *Salomon-Guillen v. Garland*, 123 F.4th 709, 714 n.2 (4th Cir. 2024) (cleaned up).

26